[No. 30741. Department·One. April 8, 1949.]
MATT EVICH, *Respondent*, v. ANTON KOVACEVICH
*et al., Appellants.*[1]

[1]Reported in 204 P. (2d) 839.

*Gagliardi, Ursich & Gagliardi*, for appellants.

*Abrams, McCush & Rinker*, for respondent.

STEINERT, J.—Plaintiff instituted suit to obtain a decree adjudging and declaring that he has an easement of way over a parcel of land owned by the defendants, adjoining a similar parcel owned by the plaintiff, and, further, to obtain a mandatory order compelling the defendants to remove a picket fence which the latter had constructed along the dividing line between the two properties; the plaintiff also sought to have the defendants enjoined from further interfering with plaintiff's free use and enjoyment of the way, and, in general, prayed for such other relief as might be deemed just and equitable in the premises. The cause was tried to the court without a jury, and a decree was subsequently entered in favor of the plaintiff. The defendants moved for a new trial, on the grounds (1) that the evidence was insufficient to support the decision of the court; (2) that the decree is contrary to law; and (3) that error in law occurred in the trial of the case. Upon denial of their motion, defendants appealed.

The facts out of which the instant controversy arose are as follows: Lot 6, block 7, Amended Plat of Fairhaven, Bellingham, Washington, is a fifty-foot lot located on the east side of Twelfth street in that city. In about the year 1900, Angus Rankin, being then the owner of the lot, constructed thereon two dwelling houses facing west, toward Twelfth street, separated from each other by a strip of ground slightly over eight feet in width. Until about 1919, Rankin rented these houses to various tenants.

Appellants, Anton Kovacevich and Andrea Kovacevich, husband and wife, are the present owners of the north half of the lot, together with the house thereon, commonly known as 1025 Twelfth street. Respondent, Matt Evich, now a widower, is the present owner of the south half of the lot, together with the house thereon, commonly known as 1027 Twelfth street.

The front and rear entrances to both houses were originally served by a wooden walk which ran in an easterly-westerly direction, approximately along the middle of the intervening eight-foot strip of ground. Sometime prior to 1916, the wooden walk was replaced by a concrete walk,

which, except for later additions of certain connecting walks at the rear of the properties, has at the present time the same location and dimensions as when it was originally constructed. This concrete walk is thirty-five inches in width and, measured from its respective near edges, is about thirty-five and one-half inches distant from the south side of appellants' house, and about twenty-seven inches distant from the north side of respondent's house. At its front, or westerly, end, the walk flares outwardly in both a northerly and a southerly direction so as to give access to the front steps of both houses. This flare, or apron, constitutes, in part, the top of a flight of six concrete steps leading from the walk previously described down toward the public sidewalk on Twelfth street.

In January, 1919, Angus Rankin, then owner of the entire lot 6, conveyed the south half thereof, as then improved, to one Whitney, who, later in that year, conveyed the same one-half to respondent. In April, 1919, Rankin conveyed the north half of the lot, as then improved, to a predecessor in interest of appellants.

In 1932, respondent made extensive alterations on that portion of lot 6 which he had purchased, by excavating a basement and garage underneath his residence, closing off the outside door at the rear, or east end, of the house, and opening a new outside door on the back portion, but on the north side, of the building facing the walk here in question.

In 1935, appellants began their occupancy of the house located on the north half of lot 6, as tenants of one Norman, who then owned that portion of the property. In 1945, appellants purchased, or completed their purchase of, the north half of the lot from Norman and thereafter continued in possession thereof.

Shortly after becoming owners of the north half of the lot, appellants constructed a picket fence along the dividing, or common boundary, line of the two properties. The fence extended from the rear portion of lot 6, westwardly toward Twelfth street, to a point about nine and one-half inches from the edge of the top step of the flight of concrete steps leading toward the public sidewalk. This act on the part of

the appellants resulted in locating substantially all of the concrete walk, described above, on their side of the fence, from its easterly end almost to its juncture with the flight of concrete steps. Furthermore, if the fence line were extended westwardly, down the steps, it would locate about four-fifths of the width of the stairs on appellants' side. Under the present condition, respondent has a space about twelve and one-half inches in width through which to pass in entering upon or leaving the flared apron leading to his front entrance. He is, of course, no longer able to make use of the concrete walk for purposes of ingress and egress to and from the back entrance to his home, but must, instead, use the twenty-seven-inch unpaved passage between the fence and the north side of his house. Also, the screen door at the present back entrance cannot be fully opened, on account of the proximity of the fence. On the south side of respondent's house, however, there is a space, fifty-four inches in width, between that side of the house and respondent's south boundary line.

From the time the houses were first constructed, in about 1910, down to the time when the fence was built, in 1945, the entire walk, described above, and the concrete steps leading therefrom toward the public sidewalk in front of the houses have been used by the occupants of both residences, their families and friends, tradesmen, and children at play. They also served as part of a short cut to Knox street, which intersects Twelfth street to the south and which was customarily reached by passing over what the parties herein have termed "the old Rankin place." Whether one approached or withdrew from either of the two houses, by way of Twelfth street or by way of Knox street was a matter of choice, dependent upon his own convenience. As to the "right" to make use of the walk here in question, it is fairly well characterized by the statements made by various witnesses at the trial, such as: "Everybody used it"; ". . . we were all friends"; and "Never anything said."

In consequence of appellants' construction of the fence, respondent shortly thereafter instituted this action in the

superior court. During the trial of the case, the trial judge, accompanied by attorneys representing the parties, visited and viewed the premises. At the conclusion of the hearing, and after taking the matter under advisement, the trial court entered its decree, making its full findings therein, adjudging and declaring that an easement over the walk and steps existed for the proper use and enjoyment of respondent's property, ordering appellants to remove the fence, and enjoining them from further obstructing or interfering with respondent's free use and enjoyment of the way.

This appeal followed, and, at this point, we deem it proper to say that appellants' counsel did not try the case in the superior court, but came into it only upon the appeal.

The trial court incorporated in its decree an express finding that respondent's predecessors in interest, as grantees of the south half of lot 6, had acquired an easement by implication in the use of the steps and walk running from Twelfth street to the rear of their premises. One of appellants' principal assignments of error is directed to that finding.

Concerning the manner in which easements by implication come into existence, this court has said:

"Easements by implication arise where property has been held in a unified title, and during such time an open and notorious servitude has apparently been impressed upon one part of the estate in favor of another part, and such servitude, at the time that the unity of title has been dissolved by a division of the property or a severance of the title, has been in use and is reasonably necessary for the fair enjoyment of the portion benefited by such use. The rule, then, is, that upon such severance, there arises, by implication of law, a grant of the right to continue such use." *Bailey v. Hennessey*, 112 Wash. 45, 191 Pac. 863.

The foregoing quotation was reiterated in *Rogers v. Cation*, 9 Wn. (2d) 369, 115 P. (2d) 702, and *White v. Berg*, 19 Wn. (2d) 284, 142 P. (2d) 260.

The essentials to the creation of an easement by implication are, as variously stated by this court, the following: (1) a former unity of title, during which time the

right of permanent user was, by obvious and manifest use, impressed upon one part of the estate in favor of another part; (2) a separation by a grant of the dominant tenement; and (3) a reasonable necessity for the easement in order to secure and maintain the quiet enjoyment of the dominant estate. *Bailey v. Hennessey, supra*; *Berline v. Robbins*, 180 Wash. 176, 38 P. (2d) 1047; *Hubbard v. Grandquist*, 191 Wash. 442, 71 P. (2d) 410; *White v. Berg, supra*; *Bushy v. Weldon,* 30 Wn. (2d) 266, 191 P. (2d) 302.

 In evaluating these essentials, however, it is well to bear in mind that the cardinal consideration upon the question of easement by implication is the presumed intention of the parties concerned, as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other. *Bailey v. Hennessey, supra*; *Rogers v. Cation, supra*; 3 Tiffany, Real Property (3d ed.), 253, 254, § 780; 17 Am. Jur. 945 *et seq.*, Easements, § 33; 28 C. J. S. 687, Easements, § 30.

Appellants concede that the first two essential requirements, enumerated above, are present in the instant case. They contend, however, that the evidence is insufficient to warrant a finding that the easement is reasonably necessary to the quiet enjoyment of respondent's property.

 While there is some conflict in the cases as to the degree of necessity required to create an easement by implication, the prevailing rule is that the creation of such easement does not require an absolute necessity, but only a reasonable necessity. 17 Am. Jur. 954, Easements, § 44. This court has heretofore declared such to be the majority rule and has aligned itself with it. In the case of *Bailey v. Hennessey, supra,* we said:

"Though the courts are not unanimous, the majority rule is that the necessity need not be a strict necessity but need only be a reasonable necessity, and that degree of necessity is sufficient which merely renders the easement essential to the convenient or comfortable enjoyment of the property as it existed when the severance took place.

"We have not heretofore been called upon to determine, in questions of easements by implication, what degree of necessity is required, but the question has arisen in cases

involving other sorts of easements, and we have adopted the interpretation just stated, and there is no reason why a stricter one should be applied in cases of this nature. [Citing cases.]"

In *Berlin v. Robbins, supra,* appears this statement, at p. 188:

"The weight of authority supports the rule that the necessity need only be a reasonable one. [Citing authorities.]"

In the recent case of *Bushy v. Weldon, supra,* this court repeated the two foregoing quotations and then declared that no better statement of the rule could be made than as set forth in 9 R. C. L. 763, 764, Easements, § 27, as follows:.

" 'The degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. It is sufficient if full enjoyment of the property cannot be had without the easement, or if it materially adds to the value of the land. It has been contended that the use of the word "necessary" in these cases is misleading; that the so-called "necessity" upon which the judges rely is in fact no necessity at all, but a mere beneficial and valuable convenience. Certainly such use of the word must be distinguished from the sense in which it is employed in designating ways of necessity. Some courts have adopted as the test, whether the easement is one for which a substitute can be furnished by reasonable labor and expense; while others adopt the rule that the presence of no degree of necessity is requisite in order that the easement shall pass, that if an apparent and continuous quasi easement forms a part of the tenement conveyed, and adds to the value for use, it becomes an easement and passes with the conveyance.' "

The facts in the case before us disclose, and the trial court specifically found, that the walk here in question was originally constructed to serve both houses; that it was necessary to the reasonable and convenient use and enjoyment of each of the dwellings; that the existence of the walk and pathway and the steps leading thereto have at all times been clearly evident and their purpose and use apparent; that it was the intention of Angus Rankin, the original owner of the entire lot 6, to grant and convey to his gran-

tees, predecessors in interest of the respondent, the use and enjoyment of the walk as appurtenant to, and for the use and benefit of, the south half of lot 6; and that respondent's predecessors in interest purchased the south half of the lot with the intention of using the walk for the benefit of their property.

Where, as here, the facts so strongly militate in favor of a finding that the parties fairly, though tacitly, intended that the continued use of the walkway pass as appurtenant to the granted estate, it might confidently be asserted that the requirement of necessity became correspondingly less.

Be that as it may, in light of the relatively limited space available to respondent on the north side of the house next to the present walk, and in view of the disproportionate expense and inconvenience which the trial court, after visiting the premises, thought would have been involved in constructing a new flight of steps or another walk around three sides of respondent's house, we are of the opinion that the requirement of necessity, stressed by the appellants, is fully met and satisfied by the existing circumstances in this case.

Appellants further contend that, even though an easement arose by implication, it was extinguished when respondent relocated his rear entrance.

While there might be some remote equity in appellants' suggestion that the money thereon expended might have been used in the construction of an alternate way of access, the fact remains that a *grant* of easement was implied from all the circumstances surrounding the original severance. Appellants cite no decided case from this, or any other, jurisdiction, which lends support to the contention that an easement is extinguished by such changes on the physical premises of the dominant estate. Appellants do, however, quote from 17 Am. Jur. 997, Easements, § 99, as follows:

"As a general rule, an easement implied from an existing use is subject to the conditions and burdens imposed upon it at the time of severance; it can be used only for the purposes of the dominant tenement as existing at that time.

The basis of this rule is that a person who does not secure an actual grant for all purposes is not entitled to be put in a better position than to be able to enjoy that which he had at the time the grant was made. Such rule is not followed to its full extent, at least in respect of ways of necessity."

We do not interpret the language of this quoted section to mean that the dominant estate must remain precisely in the same physical condition as that which existed when the original severance took place. An easement is not extinguished or terminated if the general purposes for which it was originally granted and used, as for instance a way of ingress and egress, continue to be so served. See, generally, 3 Tiffany, Real Property (3d ed.), p. 368, § 817, p. 376, § 821; 17 Am. Jur. 1032, Easements, § 148; 28 C. J. S. 729, Easements, § 62.

In the case at bar, the servitude of the area covered by the walk has not been materially increased by the relocation of the rear entrance door, and there is no evidence of any improper use of the easement.

■ The trial court did not err in declaring an easement by implication in respondent's favor over the way here in question.

■ Appellants also assign as error a finding made by the trial court, by way of recital in its decree, to the effect that respondent had acquired an easement by *prescription* through "adverse" user. Respondent has not urged that this court affirm such finding, except as an alternative in the event that the requirements for easement by implication should not be found to have been met.

Inasmuch as we have approved the finding made by the trial court in respect of the existence of an easement by implication, it becomes unnecessary to rule either upon this latter assignment of error asserted by the appellants or upon another assignment, under which appellants attribute repugnancy to the decree because of the fact that it recites that the two types of easement coexist.

An analogous situation arose in the case of *Hubbard v. Grandquist, supra.* In that case, the defendants contended that the complaint had been prepared, and the case tried and decided, on the theory that the plaintiffs were entitled

to an easement by *prescription.* This court in its opinion analyzed the allegations made in the plaintiffs' complaint and, upon the basis of its analysis, declared:

"The allegations referred to sufficiently present the question of respondents' [plaintiffs'] claim to an easement by implication, and if the evidence supports a decree in their favor upon this ground, the decree will not be reversed, even though the facts found by the trial court do not support the decree. This was an action in equity, and findings were not required. The evidence is before us by way of a statement of facts, and will be considered in deciding whether or not the decree finds support therein. On appeal, the case is heard *de novo,* and this court must search the entire record in determining whether or not the decree entered shall be affirmed or reversed. *Soboda v. Nolf & Co.,* 91 Wash. 446, 157 Pac. 1100; *Olson v. Fireoved,* 129 Wash. 635, 225 Pac. 643."

In the case at bar, the trial court did make findings, although not required to do so, and those findings are amply supported by the evidence. Furthermore, the record discloses that the court fully understood the issues in the case, and although it refused to compel respondents to elect whether they would proceed upon the claim of an implied easement or upon the claim of an adverse user, the court did state, at the beginning of the trial, that its conclusions as to the kind of easement here involved, if any were established, would be drawn solely from the evidence in the case. We fail to see how appellants were in any way prejudiced by the ruling of the court.

Appellants further complain that respondent was permitted to testify concerning a conversation allegedly had by respondent with Angus Rankin many years ago. In that conversation, Rankin allegedly told respondent that the walk was for "both houses to use." Appellants moved to strike that testimony, on the ground that it was incompetent and irrelevant. They now argue, upon the appeal, that the testimony was inadmissible because it did not appear from the evidence that, at the time the statement was made, Rankin had any proprietary interest in the property, and therefore the statement could not qualify under any exception to the hearsay rule.

Whether or not appellants' objection be well founded, and regardless of the testimony to which the objection relates, there was a wealth of other evidence, competent and relevant to support the decree. This action was tried to the court and, in such cases, where the decree is supported by sufficient, competent evidence, error in the admission of such testimony as is here complained of is harmless and does not constitute reversible error. *Commercial Waterway Dist. No. 1 v. King County*, 200 Wash. 538, 94 P. (2d) 491; *Hansen v. Lindell*, 14 Wn. (2d) 643, 129 P. (2d) 234; *McJannet v. Strehlow Supply Co.*, 25 Wn. (2d) 468, 171 P. (2d) 173.

■ Finally, appellants assign error upon that portion of the decree which orders removal of the fence, and they now contend that a gate opposite the rear door to respondent's house would give him complete and sufficient redress.

Whether or not the owner of land, over which an easement exists, may erect and maintain fences, bars, or gates across or along an easement way, depends upon the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case, the nature and situation of the property subject to the easement, and the manner in which the way has been used and occupied. 17 Am. Jur. 1011, Easements, §§ 120, 121; 28 C. J. S. 780 *et seq.*, Easements, § 98.

In this case, the right of the respondent to an unobstructed access to the walk along its entire length is fairly to be inferred from the circumstances of the case, the intention which the parties must have had in mind when the easement was created, the situation of the properties bordering upon the walk, and the purposes for which it had been used throughout the years. The right of the owner of the dominant tenement was to have access to the walk from his property at any point, not merely at some particular spot designated by a gate.

The decree and the order denying appellants' motion for a new trial are affirmed.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.