[No. 31359. *En Banc.* December 7, 1950.]

TORANCE EMERY SWAN et al., *Respondents*, v. DAN O'LEARY et al., *Appellants*.[1]

*O'Leary, Meyer & O'Leary,* for appellants.

*Pebbles & Kuykendall,* for respondents.

GRADY, J.—This action was instituted by respondents against appellants to quiet title to two strips of land, each fifty feet in width. A decree was entered declaring respondents were the owners of the strips of land free and clear of any claim of appellants.

On April 17, 1909, Minnie L. Swan was the owner of the east half of the northeast quarter, and the southwest quarter of the southeast quarter of section 24, township 18, north of range 3, West W. M., in Thurston county, Washington. On that date she executed a deed reading as follows:

"THIS INDENTURE WITNESSETH, That *Minnie L. Swan, unmarried,* party of the first part, for and in consideration of

[1] Reported in 225 P. (2d) 199.

the sum of *Six Hundred & Twenty-five* Dollars in *lawful money* of the United States of America to *her* in hand paid by *M. H. Draham* the party of the second part, the receipt whereof is hereby acknowledged, has remised, released and forever quit-claimed, and by these presents do sell, convey, remise, release and forever quit-claim unto said party of the second part, and to *his* heirs and assigns, the following described premises, situate, lying and being in the County of Thurston, State of Washington, *for the purpose of a Railroad right-of-way to-wit:—a strip of land 50 feet in width extending through the E ½ of the NE ¼ of Section 24, in Township 18, North of Range 3 West W. M. said strip to be located 25 feet on either side of the permanent survey line thereof through said land made by R. L. O'Brien in December 1908 and January 1909 now in the hands of the party of the second part; also a right-of-way of the same width which commences at a point 7 feet West of the Northeast corner of the SW ¼ of the SE ¼ of Section, Township & Range aforesaid, and extending in a Southwesterly direction with necessary curves to a point on the South line of said SW ¼ of SE ¼ not more than 590 feet from the South West corner of said SW ¼ of SE ¼.*

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"To Have and to Hold, All and singular the said premises together with the appurtenances, unto said party of the second part, and to *his* heirs and assigns forever

"In. Witness Whereof, The said party of the first part has hereunto set *her* hand and seal the *17th* day of *April* A. D. 1909"

A printed form was used. The italicized parts were in handwriting. The instrument was acknowledged before a notary public.

The respondent Torance Emery Swan is the successor in interest of Minnie L. Swan. At the time of the execution of the deed, the grantee was the owner of timberland situated in a locality known as the Black Hills, and acquired the strips of land in question, together with others, in order that a railroad might be constructed to haul the timber to Mud Bay, an arm of Puget Sound. The railroad was con-

structed and operated until logging operations ceased. The grantee had transferred his property to the Mud Bay Logging Company. In the early part of 1942, the railroad rails were removed. The two strips of land were conveyed to appellant Dan O'Leary December 28, 1942, and on July 2, 1946, he conveyed the one located in the southwest quarter of the southeast quarter of section 24 to appellant M. D. Musser.

The question at issue between the parties is whether the deed from Minnie L. Swan conveyed to the grantee a fee simple title to either or both of the strips of land, or rights of way or easements to be used for logging railroad purposes. The trial court held that rights of way and easements were conveyed; that when logging operations ceased and the railroad track was removed there was an abandonment thereof, and whatever interest the successors of the original grantee acquired reverted to the respondents.

The parties have cited and analyzed many cases, and have referred us to the annotation in 132 A. L. R. 142. The authorities are in hopeless conflict. They cannot be reconciled, because their authors approach the subject from different standpoints and give different weight and significance to the various factors entering into the various instruments of conveyance under consideration. About the only common ground that can be found is that the intention of the parties to the conveyance is of paramount importance and must ultimately prevail in a given case.

The instrument before us has all of the appearance of having been drawn by a layman, who did not understand the difference between a fee simple title to a strip of land and a right of way or easement over the land of which it was a part. In attempting to arrive at the intention of the parties to similar conveyances, the courts have considered such factors as whether the consideration expressed was substantial or nominal; whether the deed conveyed a strip, piece, parcel or tract of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed;

whether the deed conveyed a strip of land and limited its use to a specific purpose; whether the deed conveyed a right of way over a tract of land, rather than a strip, piece or parcel thereof; whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; whether the conveyance did or did not contain a *habendum* clause, and many other considerations suggested by the language of the particular deed. The courts have found no difficulty with those conveyances where a grantor, by appropriate words of conveyance, unqualifiedly conveyed a strip of land to a grantee by the usual form of conveyance; nor have they found any difficulty with those where a properly described right of way or easement over a designated tract of land was set forth in the instrument of conveyance. The difficulty arises when the instrument of conveyance is ambiguous, is in some way qualified, or appears to be a mixture of the two ideas.

The deed before us is a hybrid. In one instance there is conveyed a strip of land fifty feet in width for the purpose of a railroad right of way. In the second instance, there is conveyed a right of way of the same width. According to some authority, the deed conveyed a strip of land in fee simple, but for a special and restricted purpose, and also a right of way of the same width over another tract of land. It seems inconceivable that the parties, having in mind the use of the strips of land for the same purpose, would convey a fee simple title to one, but in the case of the other a right of way only.

It is very clear from what subsequently happened that it was the intention of the grantee to acquire the two strips of land in order that a logging railroad might be constructed thereon over which to haul timber logged from his lands, and for no other purpose. The trial court was of the opinion that our case of *Morsbach v. Thurston County*, 152 Wash. 562, 278 Pac. 686, was controlling, and that the parties intended by the deed to convey easements only and not a fee simple title, and that when logging operations terminated

and the rails were removed the property was abandoned as a right of way. In that case, we cited and reviewed a number of authorities on the subject now under consideration. The deed conveyed to a railroad company "the right-of-way for the construction of said company's railroad in and over the south half of the northeast quarter of section twenty-two, and the west half of the northwest quarter of section twenty-three of township fifteen north of range two west, situate in Thurston county, Washington territory." The question raised was whether the fee or an easement was conveyed. Some confusion arose by the suggestion of one of the parties that the effect of the deed, were it not for the words "right-of-way for the construction of said company's railroad," and because of its indefinite description, would be to transfer in fee simple all of the legal subdivisions mentioned in the deed. We disposed of the suggestion by stating that manifestly such was not the intent of the parties.

 We think when the opinion is critically read and considered with the precise question we have before us in mind, it is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title. Applying that principle to the deed before us, we reach the conclusion that a right of way fifty feet in width for railroad purposes was granted over the tract of land first described, and that there was also granted a right of way for the same purpose over the other tract described. It therefore follows that, when the rights of way were abandoned, they reverted to the successors of the original owners of the lands over which they were granted.

The judgment is affirmed.

BEALS, ROBINSON, MALLERY, SCHWELLENBACH, HILL, and HAMLEY, JJ., concur.

DONWORTH, J. (dissenting in part)—I find myself unable to fully agree with the construction of the deed of April

17, 1909, which is adopted by the majority. In my opinion, the instrument conveyed a fee simple title to the strip of land fifty feet in width extending through the east half of the northeast quarter of section twenty-four.

The operative portion of the deed reads:

"[The grantor] has remised, released and forever quit-claimed, and by these presents do sell, convey, remise, release and forever quit-claim unto said party of the second part, and to his heirs and assigns, the following described premises, situate, lying and being in the County of Thurston, State of Washington, for the purpose of a Railroad right-of-way to-wit:—a strip of land 50 feet in width . . . [Here follows a definite description of a parcel of land.]"

After the legal description of both noncontiguous parcels, the instrument recites:

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

"To Have and to Hold, All and singular the said premises together with the appurtenances, unto said party of the second part, and to his heirs and assigns forever."

Construing the instrument to be a quitclaim deed as defined by Rem. Rev. Stat., § 10554 [P.P.C. § 499-5], the legal effect of such a conveyance is thereby declared to be as follows:

"Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quit claim to the grantee, his heirs and assigns in fee of all the then existing legal and equitable rights of the grantor in the premises therein described, but shall not extend to the after acquired title unless words are added expressing such intention."

Consequently, applying this statute to the language used in the deed of April 17, 1909, the legal effect of its execution and delivery was to convey to the grantee all of the grantor's then existing equitable and legal rights in the parcel of land described therein.

The use of the words "for the purpose of a railroad right of way" is merely a declaration of the purpose of the conveyance and does not operate to limit the grant. *Quinn v. Pere Marquette R. Co.*, 256 Mich. 143, 239 N.W. 376.

Therefore, the grantee and his successors in interest hold fee simple title to this strip of land in the northeast quarter of section 24 notwithstanding the abandonment of its use for railroad purposes in 1942.

I agree with the majority with respect to the second parcel described in the deed, that is, that the words "a right of way of the same width" constituted an easement for railroad purposes across the southwest quarter of section 24. There is no definite description from which the exact position of the land involved could be ascertained. It was a floating easement, although not as indefinite as to location as the description involved in *Morsbach v. Thurston County*, 152 Wash. 562, 278 Pac. 686. Hence, when the rails were removed in 1942, all rights of the grantee in the land within the fifty foot right of way terminated.

The result suggested in this dissent may seem incongruous but the parties are bound by the legal terminology used in the instrument of conveyance regardless of the ineptitude of the draftsman. If this construction is not what the parties to the instrument intended, the responsibility is their own because the court must consider the instrument as drawn and apply to the words used therein their ordinary legal meaning.

I would revise the trial court's decree accordingly.