[No. 51953–6.   En Banc.   December 24, 1986.]

WILBUR H. LAWSON, JR., ET AL, *Appellants,* v. THE STATE
OF WASHINGTON, ET AL, *Respondents.*

*Morris & Rodgers, S. Michael Rodgers,* and *Daryl A. Deutsch,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Shirley W. Battan, Assistant,* for respondent State.

*Norm Maleng, Prosecuting Attorney,* and *Fred A. Kaseburg, Deputy,* for respondent King County.

DOLLIVER, C.J.—In these consolidated actions, the plaintiffs are owners of property abutting or bisected by railroad rights of way. Among other things, plaintiffs challenge the constitutionality of RCW 64.04.180 and RCW 64.04.190. These statutes authorize a change in the use of a railroad right of way to a public nonrailroad use without compensation to holders of reversionary interests in the right of way.

Plaintiffs Donald M. and Janet Sue Wright own property bisected by a right of way which runs along the east side of Lake Sammamish in King County. Burlington Northern Railroad Company has operated a railroad over this right of way. The remaining plaintiffs own land abutting a second right of way in King County, which is 4.8 miles long and lies between Kenmore and Woodinville. Burlington Northern also operated a railroad over this right of way, but in December 1984, it petitioned the Interstate Commerce Commission for permission to discontinue rail service over this right of way.

In a letter dated January 30, 1985, King County requested the ICC to impose a public use condition upon abandonment of the 4.8–mile long right of way, pursuant to 49 U.S.C. § 10906 and 49 C.F.R. § 1152.28. King County sought a finding that the right of way is suitable for "other public purposes" and for "public use." King County intends to use a portion of this right of way as a recreational hiking and bicycle trail linking the existing Burke–Gilman and Sammamish River trails.

In June 1985, the ICC authorized Burlington Northern to abandon rail service over the Kenmore–Woodinville right of way, and imposed a 120–day right of way "public use" condition. Under this condition, the right of way could not be disposed of during 120 days after the ICC order unless it was first offered for sale for public purposes on reasonable terms.

In the meantime, the Wrights filed this action against the

State of Washington, King County, the King County Parks and Recreation Department, and Burlington Northern. They sought a declaratory judgment holding RCW 64.04-.180 and RCW 64.04.190 unconstitutional on the ground that they authorize unlawful takings without just compensation. Const. art. 1, § 16. A second, similar complaint was filed against the same parties, plus the City of Bothell, by a number of owners of property abutting the right of way between Kenmore and Woodinville. Both complaints contain allegations that plaintiffs own the reversionary interests in the land underlying the rights of way, and allegations that, in the original conveyances to Burlington Northern's predecessor in interest, only easements were granted. The plaintiffs further alleged existence of the statutes depresses their land values, and the Wrights contended that the statutes create a cloud upon their title.

Following consolidation of the two cases for trial, King County moved under CR 12(b)(6) for dismissal of the complaints for failure to state a claim upon which relief can be granted. On July 16, 1985, the trial court granted this motion. The court concluded: a right of way granted to a railroad is a perpetual public easement; abandonment of a railroad right of way does not occur upon a change in use from railroad purposes to some other form of public transportation, and thus a change in use from "rails to trails" does not constitute abandonment of the right of way; King County can acquire a railroad right of way and use it for nonrailroad public transportation purposes without compensating any reversionary interest holders; and RCW 64.04.180 and RCW 64.04.190 are constitutional. We accepted direct review, and now reverse.

As a preliminary matter, we grant King County's motion to submit additional evidence on review. This evidence is King County's purchase from Burlington Northern, via quitclaim deed, of the Kenmore–Woodinville right of way. We have applied the criteria of RAP 9.11, and find the proffered evidence meets the requirements of the rule. *See Washington Fed'n of State Employees v. State*, 99 Wn.2d

878, 665 P.2d 1337 (1983). The evidence is important to our disposition of these actions.

King County has also moved to strike all or portions of plaintiffs' brief. The County has included this motion in its brief. A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits. RAP 10.4(d). Under the facts here, striking the particular statements in plaintiffs' brief which the County challenges would not preclude hearing this case on the merits. Therefore, we decline to address the motion.

█ Turning to the issues raised in this appeal, we emphasize at the outset that the trial court dismissed this case on King County's motion to dismiss for failure to state a claim upon which relief can be granted. CR 12(b)(6). For purposes of a CR 12(b)(6) motion, the plaintiffs' factual allegations are presumed to be true. *Bowman v. John Doe,* 104 Wn.2d 181, 183, 704 P.2d 140 (1985). An action may be dismissed under CR 12(b)(6) only if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" *Bowman,* at 183 (quoting *Orwick v. Seattle,* 103 Wn.2d 249, 254, 692 P.2d 793 (1984); *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978)). Plaintiffs have alleged Burlington Northern's predecessor in interest acquired easements for railroad purposes only, and these easements will revert to plaintiffs upon abandonment of the rights of way by Burlington Northern.

We acknowledge that ordinarily the construction of right of way deeds is a mixed question of fact and law. *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 571-72, 716 P.2d 855 (1986). Ascertaining the parties' intent is a factual question, and is determined from the entire document. *Roeder Co.,* at 572. Due to the nature of its decision, the trial court reached no conclusion as to the nature of plaintiffs' interests. On the limited record provided us for purposes of reviewing the trial court's decision to grant the CR 12(b)(6) motion, we also do not determine the nature of

plaintiffs' interests. As we explain here, if plaintiffs can prove their allegations, they would be entitled to the relief they seek. The trial court erred in granting King County's motion to dismiss.

■ We first address the issues raised in light of common law principles. Defendants argue that under Washington law a railroad is a perpetual public easement. They contend that a railroad right of way easement does not terminate upon a change from one transportation use to another transportation or recreation use, or any other consistent public use. We disagree.

It is true railroad companies were created on the theory that they will provide a public benefit. Pursuant to statute, the State has conferred upon them special and extraordinary privileges. In return, the railroads must hold their property in trust for the public use. *Puget Sound Elec. Ry. v. Railroad Comm'n,* 65 Wash. 75, 83–84, 117 P. 739 (1911). A railroad is a public highway, created for public purposes. *Puget Sound Elec. Ry.,* at 84.

But these considerations do not necessarily lead to the conclusion that a railroad right of way is a perpetual public easement. To the contrary, this court has frequently recognized that railroad rights of way revert to reversionary interest holders when a railroad company abandons a line. *See, e.g., Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 716 P.2d 855 (1986); *Zobrist v. Culp,* 95 Wn.2d 556, 627 P.2d 1308 (1981); *Morsbach v. Thurston Cy.,* 152 Wash. 562, 278 P. 686 (1929). These cases demonstrate that, under Washington law, when an easement is granted to a railroad through a private conveyance, the easement is not a "perpetual public easement." Instead, the particular deeds conveying the right of way must be interpreted to determine the scope and duration of the easement granted. *See Swan v. O'Leary,* 37 Wn.2d 533, 225 P.2d 199 (1950). This is true even though, as this court has observed, a railroad easement has a peculiar nature as "a very substantial thing . . . more than a mere right of passage . . . more than an easement." *Morsbach v. Thurston Cy., supra* at

569.

At common law, where a deed is construed to convey a right of way for railroad purposes only, upon abandonment by the railroad of the right of way the land over which the right of way passes reverts to the reversionary interest holder free of the easement. *See generally Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d at 571; *Swan v. O'Leary, supra; Morsbach v. Thurston Cy., supra.* In addition to outright abandonment of a right of way, there may be a change in use of the right of way which is inconsistent with the purpose for which the right of way was granted. Where the particular use of an easement for the purpose for which it was established ceases, the land is discharged of the burden of the easement and right to possession reverts to the original landowner or to that landowner's successor in interest. *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d at 571. *Cf.* 3 J. Sackman, *Nichols on Eminent Domain* § 9.35, at 9–113 (3d rev. ed. 1985) (imposition of a new easement of a nature different from the old one, and wholly inconsistent with it, amounts to abandonment of the old easement).

In determining the meaning of a grant, it will be inferred, in the absence of express language to the contrary, that the grantee is not restricted to the methods of use which were current at the time of the grant. *See, e.g., Faus v. Los Angeles,* 67 Cal. 2d 350, 431 P.2d 849, 62 Cal. Rptr. 193 (1967); *Schnabel v. County of Du Page,* 101 Ill. App. 3d 553, 562, 428 N.E.2d 671 (1981); *Bernards v. Link,* 199 Or. 579, 248 P.2d 341, 263 P.2d 794 (1952). In *Faus,* the court held that the grantors, who had conveyed electric railroad rights of way in the early 1900's, primarily intended to provide public transportation to serve their adjoining land. When motor bus transportation replaced the discontinued electric railroads, the court held that the substituted service effectuated the grantors' purpose so that the easements were not destroyed by use for motor bus service. *See also Logan v. Brodrick,* 29 Wn. App. 796, 631 P.2d 429 (1981).

The defendants rely heavily upon *Faus,* and contend that

the proposed change in use of the Kenmore–Woodinville right of way is consistent with the grantors' intent. They also claim there will be no substantial variance in the mode or extent of the use of the easement, and therefore there will be no greater burden on the servient estate than was contemplated by the grantors. At least one court has agreed with the defendants and the trial court here that abandonment does not occur upon a change from railroad use to hiking and biking use. *State v. Department of Natural Resources,* 329 N.W.2d 543 (Minn.), *cert. denied,* 463 U.S. 1209 (1983).

■ We disagree. Plaintiffs have alleged that the grantors conveyed easements for railroad purposes only. In *Zobrist v. Culp, supra,* we construed a deed which provided that a right of way granted to a railroad would revert to the grantor if the railroad ceased or failed to use the right of way for the purpose of "running and operating a railroad" over the right of way for 12 consecutive months. We said the operation of a railroad is furnishing transportation, either freight or passenger, to the public. Although specifically interpreting the deed involved in that case, our decision in *Zobrist* provides guidance here; clearly, a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes only. In the words of the Wisconsin State Supreme Court, "[t]o hold that the conversion from a public transportation system to a recreational system still reflected the purpose of the original easement would, in our view, stretch the principle of *Faus* beyond reasonable limits." *Pollnow v. Department of Natural Resources,* 88 Wis. 2d 350, 366–67, 276 N.W.2d 738 (1979) (construing common law).

*Pollnow* and other decisions from other jurisdictions support our conclusion that a change in use of a railroad right of way to a recreation trail or nature trail is a change of use evidencing abandonment of the right of way. *See, e.g., Schnabel v. County of Du Page, supra.* In *Schnabel,* the court found that one factor indicating the railroad's abandonment of its right of way was its attempt to convey

the right of way to the County for the purpose of establishing a prairie path or nature trail. Significantly, the court stated that no express language of reversion in the grant was required for the reversionary interest holders to regain use of the right of way upon abandonment of the railroad. *Schnabel,* at 559. The court said that the easement expired by its own limitation upon abandonment. *Schnabel.* This view accords with our decision in *Morsbach v. Thurston Cy., supra* (reversion despite absence of express reversionary clause in grant).

Applying common law principles, we hold that a change in use from "rails to trails" constitutes abandonment of an easement which was granted for railroad purposes only. At common law, therefore, the right of way would automatically revert to the reversionary interest holders. *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 716 P.2d 855 (1986); *Morsbach v. Thurston Cy., supra.*

Thus, we come to the question of the constitutionality of RCW 64.04.180 and RCW 64.04.190. In relevant part, these two statutes, enacted in 1984, authorize a change in public use of a railroad right of way to a different public use without payment of compensation to any reversionary interest holders. The trial court held that these statutes are constitutional.

RCW 64.04.180 provides:

> Railroad properties, including but not limited to rights–of–way, land held in fee and used for railroad operations, bridges, tunnels, and other facilities, are declared to be suitable for public use upon cessation of railroad operations on the properties. It is in the public interest of the state of Washington that such properties retain their character as public utility and transportation corridors, and that they may be made available for public uses including highways, other forms of mass transportation, conservation, energy production or transmission, or recreation.

RCW 64.04.190 provides:

> (1) Public utility and transportation corridors are railroad properties (a) on which railroad operations have

ceased; (b) that have been found suitable for public use by an order of the Interstate Commerce Commission of the United States; and (c) that have been acquired by purchase, lease, donation, exchange, or other agreement by the state, one of its political subdivisions, or a public utility.

(2) A public utility and transportation corridor retains its public use character as long as it is owned by a public agency or utility. A public utility and transportation corridor is not subject to reversion, taking by adverse possession, or any similar property interests ripening on the cessation of railroad operations.

Plaintiffs claim these statutes authorize unconstitutional takings of private property for public use without just compensation to the holders of reversionary interests in land underlying railroad rights of way. Defendants contend the statutes merely embody common law. Defendants claim plaintiffs' reversionary interests are not eliminated by the statutes, reasoning that if the rights of way are ever free of public use, plaintiffs will obtain possession of the land. Finally, defendants contend plaintiffs have no vested rights in the rights of way, and therefore their reversionary interests may be affected by legislation. We reject each of these contentions.

As we have discussed, under the common law in this state these rights of way would automatically revert to the reversionary interest holders upon abandonment of the rights of way by the railroad. A statute which expressly prevents the ripening of the reversionary interests upon cessation of railroad use, and permits other public uses of the rights of way, is clearly a departure from common law. The statutes do not merely embody common law.

Defendants' second contention is somewhat startling. The argument that the statutes are valid because they do not "eliminate" plaintiffs' reversionary interests strains credulity. Without the statutes, the holders of the reversionary interests would absolutely and automatically obtain possession of the easements upon railroad abandonment. Under the statutes, they would not.

We also reject defendants' contention that plaintiffs' interests may be validly affected by legislation. Defendants rely principally on *Gillis v. King Cy.*, 42 Wn.2d 373, 255 P.2d 546 (1953). In *Gillis,* plaintiffs were owners of property abutting a right of way dedicated for a county road. At the time of the dedication, a statute provided that if the road remained unopened for public use for 5 years, it would be vacated and the land would pass to the abutting property owners. The road involved was in a platted tract and remained unopened for 5 years. During that period, however, the Legislature amended the statute by providing that it would not apply to a dedicated road in any plat. The plaintiffs in *Gillis* argued that the amendment did not apply to the dedication because the dedication was made before the amendment was enacted.

This court rejected plaintiffs' argument that the statute could not constitutionally be applied retroactively. The court first noted the purpose of the statute was to specify a certain period of years after which the common law rule of presumption of abandonment would be given effect. The court said the right granted by the statute to abutting property owners was therefore

> a mere expectancy, dependent upon the street remaining unopened for the full five–year period. It was comparable to the possibility of reverter which exists in the grantor of a fee simple determinable. The possibility of reverter is not a vested right, but a mere expectation of property in the future, and so may be defeated by statute.

*Gillis v. King Cy., supra* at 377–78.

■ *Gillis* is not dispositive here, although the legal principles discussed there are pertinent to defendants' argument. Unquestionably, the Legislature has the power to enact a retrospective statute, unless the statute contravenes some constitutional inhibition. *State v. Douty,* 92 Wn.2d 930, 935, 603 P.2d 373 (1979) (citing *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 315, 89 L. Ed. 1628, 65 S. Ct. 1137 (1945)). As set forth in *Gillis,* a statute may not be given retroactive effect where the effect would be to inter-

fere with vested rights. *Gillis v. King Cy., supra* at 376. *See also In re Marriage of MacDonald,* 104 Wn.2d 745, 750, 709 P.2d 1196 (1985); *Lynch v. United States,* 292 U.S. 571, 576–80, 78 L. Ed. 1434, 54 S. Ct. 840 (1934). Thus, for example, a statute may not be applied retroactively where the result would be to impair the obligation of contract, or to deprive one of property without due process of law. *Gillis v. King Cy., supra* at 376. We have said that

> [a] vested right, entitled to protection from legislation, must be something more than a *mere expectation* based upon an anticipated continuance of the existing law; *it must have become a title,* legal or equitable, *to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.*

*In re Marriage of MacDonald, supra* at 750 (quoting *Godfrey v. State,* 84 Wn.2d 959, 963, 530 P.2d 630 (1975)).

Here, unlike the situation in *Gillis,* plaintiffs have alleged they hold the reversionary interests in the land underlying the rights of way, and that easements for railroad purposes only were granted to the railroad. Under these allegations, plaintiffs have legal title to the fee underlying the rights of way, which presently entitles them to the future enjoyment of the land upon cessation of railroad use. Also, unlike the situation in *Gillis,* the interests alleged here were created by private conveyances and not by legislative grant. Most importantly, as we discuss below, we conclude these are valuable property interests entitled to protection under our constitution's prohibition against takings without payment of just compensation. For these reasons, we hold the Legislature cannot defeat by statute the existing interests alleged here.

Defendants' assertion that plaintiffs hold only possibilities of reverter does not comport with the allegations here. As defendants themselves agree, a possibility of reverter exists where there has been a conveyance of a fee simple determinable. *See* T. Bergin & P. Haskell, *Preface to Estates in Land and Future Interests* 56–59 (2d ed. 1984).

While we acknowledge some similarity between such a grant and the grant of a railroad right of way easement, we decline to hold that all railroad easements are necessarily fees simple determinable subject to a right of reverter.

■ We are also aware that courts and commentators have concluded that certain future interests are so remote and speculative that they are not entitled to constitutional protection under takings and due process provisions. *See, e.g., Cavett v. Peterson*, 688 P.2d 52 (Okla. 1984); 2 J. Sackman, *Nichols on Eminent Domain* § 5.05 (3d rev. ed. 1985). While some courts rely upon the real property distinctions between a vested property interest and a contingent property interest for determining whether an interest will be constitutionally protected, at least one commentator suggests that the true inquiry should be whether a given future interest is of a sufficiently substantial character to be given constitutional protection, and depends on factors other than whether the interest is classified as vested or contingent. L. Simes & A. Smith, *Future Interests* § 136 (2d ed. 1956). *See also Hemphill v. State Hwy. Comm'n*, 245 Miss. 33, 145 So. 2d 455 (1962). While we recognize there may be some future interests which may be affected by legislation without violation of our constitutional prohibitions, reversionary interests such as those alleged here are not of that type.

These conclusions lead inevitably to plaintiffs' claim that the statutes authorize takings in violation of Const. art. 1, § 16: "No private property shall be taken or damaged for public or private use without just compensation having been first made . . ."

What is, or is not, an unlawful taking is a judicial question. *Bowes v. Aberdeen*, 58 Wash. 535, 109 P. 369 (1910). The preliminary question is whether the plaintiffs have any property interest protected by Const. art. 1, § 16. *State v. Evans*, 96 Wn.2d 119, 126, 634 P.2d 845 (1981); *State ex rel. Horne v. McDonald*, 32 Wn.2d 272, 201 P.2d 723 (1949); *Tacoma v. Mason Cy. Power Co.*, 121 Wash. 281, 209 P. 528 (1922). We have repeatedly stated that "prop-

erty" encompasses many rights. The word "property" is used in the constitutional sense in a "comprehensive and unlimited sense . . . It is not any particular kind of property that is mentioned, but the wording is, 'no private property.'" *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 286, 66 P. 385 (1901). Property in a thing consists in its ownership and possession, and in the unrestricted right of use, enjoyment and disposal. *Lange v. State,* 86 Wn.2d 585, 590, 547 P.2d 282 (1976) (citing *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 409, 348 P.2d 664, 77 A.L.R.2d 1344 (1960)).

Several factors persuade us that, upon plaintiffs' allegations that they hold reversionary interests which entitle them to possession upon extinguishment of the railroad easement, plaintiffs have enforceable legal rights in the disputed property which are protected under the takings provision of our constitution. Plaintiffs presently own fee interests underlying the rights of way. Plaintiffs are clearly ascertainable persons. *Cf.* L. Simes & A. Smith, *Future Interests* § 136 (2d ed. 1956) ("[w]hen a contingent remainder is limited to an existing ascertained person there is no question but that the courts will recognize the interest as having present existence"). The interests are alienable and devisable. *See Hemphill v. State Hwy. Comm'n, supra* at 44–45. The imminence of abandonment, fostered by the 1984 passage of RCW 64.04.180 and RCW 64.04.190, indicates that plaintiffs have compensable interests. *See* 2 J. Sackman, *Nichols on Eminent Domain* § 5.05[1] (3d rev. ed. 1985) (if, at time of taking, the event upon which property is to revert is imminent, and its occurrence within a reasonably short time probable, the future interest holder is entitled to compensation); *Chew v. Commonwealth,* 400 Pa. 307, 161 A.2d 621 (1960). Put simply, abandonment by the railroad is a necessary predicate to use as a recreation trail. At the time of abandonment plaintiffs' interests become possessory. Thus, we hold these reversionary interests are property protected under Const. art. 1, § 16.

It therefore follows King County cannot acquire the

Kenmore–Woodinville right of way from Burlington Northern without payment of just compensation to the reversionary interest holders. If the County takes this right of way and commences to build a recreation trail, it does so in violation of the constitution.

We note that, insofar as the present record reveals, the County has only acquired, through a quitclaim deed, whatever interest Burlington Northern held. There is a strong argument to be made that Burlington Northern had no interest to convey to the County: upon abandonment of the right of way the land automatically reverted to the reversionary interest holders. Be that as it may, we are not disposed to ignore the constitutional implications of the County's attempt to acquire the rights of way without payment of compensation to the reversionary interest holders.

■ Although we conclude King County, upon these allegations, has violated Const. art. 1, § 16, we do not find both RCW 64.04.180 and RCW 64.04.190 offensive. RCW 64.04.180 merely states the public interest in maintaining railroad rights of way as public thoroughfares. To the extent it may be argued this statute is also meant to suggest that "rails to trails" is a permissible change in use, we have already rejected that suggestion. We hold RCW 64.04-.190 unconstitutional as applied insofar as it purports to authorize King County to acquire without payment of just compensation existing reversionary interests which follow easements for railroad purposes only. It is unnecessary for us to decide whether the statute can be constitutionally applied to some more remote and speculative type of interest.

Despite defendants' suggestion that federal law requires a different result, our decision does not conflict with 49 U.S.C. § 10906. 49 U.S.C. § 10906 provides that, when the ICC determines that abandonment of railroad properties is appropriate, the ICC is directed to determine whether the rail properties "are suitable for use for public purposes, including highways, other forms of mass transportation, conservation, energy production or transmission, or recre-

ation." If the ICC finds the properties are suitable for public purposes, they may be sold, leased, exchanged, or otherwise disposed of only under conditions provided in the order of the ICC. The ICC may prohibit any sale of the railroad properties for not more than 180 days after the effective date of its order, unless the properties have first been offered on reasonable terms for sale for public purposes.

King County suggests the ICC is required, because of these provisions, to preserve and reserve the railroad transportation rights of way for other public uses. King County states the rights of way here are governed by this act and Congress has specifically required the rights of way be made available to King County for other public uses, including recreation and transportation.

■ While section 10906 clearly demonstrates a federal goal to preserve railroad corridors for public uses, the statute does not speak to the acquisition of these rights of way without compensation to any reversionary interest holders. As the United States Supreme Court has stated, property interests are determined according to state law. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 1003, 81 L. Ed. 2d 815, 104 S. Ct. 2862 (1984). *See also Burlington Northern, Inc. Abandonment Between Fremont & Kenmore, King Cy., Wash.*, 342 I.C.C. 446, 453 (1972) (the review board rejected Seattle's contention that a railroad be required to donate a right of way for a public purpose; the court observed that "[f]irst, and foremost, such action, even if this Commission had the authority to do so, would constitute a confiscation of private property for a public purpose without just compensation [and t]his would be a patently unconstitutional act"). Moreover, at least one court has found that section 10906 does not preempt state law regarding abandonment of railroad rights of way. *See McKinley v. Waterloo R.R.*, 368 N.W.2d 131 (Iowa 1985). *See also Hayfield Northern R.R. v. Chicago & North Western Transp. Co.*, 467 U.S. 622, 632, 81 L. Ed. 2d 527, 104 S. Ct. 2610, 2617 (1984).

█ Another matter requires our attention. We find it necessary to address the question whether the Wrights are proper parties to this action. Absent issues of major public importance, a "justiciable controversy" must exist before a court's jurisdiction may be invoked under the Uniform Declaratory Judgments Act, RCW 7.24.020. *DiNino v. State ex rel. Gorton,* 102 Wn.2d 327; 330, 684 P.2d 1297 (1984).

> A "justiciable controversy" is
> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*DiNino,* at 330–31 (quoting *Clallam Cy. Deputy Sheriff's Guild v. Board of Clallam Cy. Comm'rs,* 92 Wn.2d 844, 848, 601 P.2d 943 (1979)). All four of these elements must be satisfied or the case must be dismissed; otherwise, the court steps into the prohibited area of advisory opinions. *DiNino v. State ex rel. Gorton, supra* at 331.

Nothing in the present record indicates either that Burlington Northern has abandoned or soon will abandon the right of way along Lake Sammamish. The Wrights have not alleged in their complaint that abandonment will occur. King County explains that while it has previously discussed acquiring that line for a recreation trail, there is no pending abandonment application by Burlington Northern, and no present intent by King County to acquire this right of way. We therefore conclude there is no actual, present and existing dispute, nor the mature seeds of one, between the Wrights and defendants. The Wrights' claim is thus premature. We therefore dismiss their action. (As a practical matter, if there is any present dispute between the Wrights and defendants which this decision does not resolve, we fail to perceive what it is.)

In light of our disposition of this case, we do not reach other issues raised by the parties.

We want to make clear that we do not decide here what interests are held by the respective parties. Our recent decisions in *Roeder Co. v. Burlington Northern, Inc.*, 105 Wn.2d 269, 714 P.2d 1170 (1986) and *Roeder Co. v. Burlington Northern, Inc.*, 105 Wn.2d 567, 716 P.2d 855 (1986) will doubtless affect the determination of who holds what interests in the rights of way. We note that even if the railroad received only easements, it does not necessarily follow that plaintiffs are the reversionary interest holders. We also make no determination as to what compensation might be due should King County ultimately find it necessary to condemn any part of the rights of way. Our decision here is confined to the facts as plaintiffs have alleged them.

Finally, we do not wish to leave any impression that a recreational trail is not a desirable goal. We note the Legislature has enacted a number of statutes designed to foster development and maintenance of recreational and bicycle trails and paths. *See* RCW 47.30; RCW 35.75.060; RCW 35.77.010, .015; RCW 36.75.240; RCW 36.81.121, .122. It is necessary, however, that a public entity proceed in a constitutional fashion in acquiring the way necessary for such trails.

Reversed. Remanded for further proceedings not inconsistent herewith.

BRACHTENBACH, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

PEARSON, J. (concurring in part, dissenting in part)—I concur with the majority's decision to reverse and remand this action. However, I disagree with the majority's holding that an easement "for railroad purposes" does not, as a matter of law, include a hiking and biking trail or other arguably "recreational" use. I believe that any discussion of what is intended by "railroad purposes" is premature in this instance.

This case entails the interpretation of a grant of an interest in land which, for purposes of the defendants' CR 12(b)(6) motion, is considered an easement. The scope of an easement is controlled by the intent of the parties at the creation of the easement. *Brown v. Voss,* 105 Wn.2d 366, 371, 715 P.2d 514 (1986); *Zobrist v. Culp,* 95 Wn.2d 556, 560, 627 P.2d 1308 (1981); *Logan v. Brodrick,* 29 Wn. App. 796, 631 P.2d 429 (1981). Regardless of what general rules might apply to easements for railroads, a court must always look to the particular language of the deed in question to determine intent. *State v. Department of Natural Resources,* 329 N.W.2d 543, 546 (Minn.), *cert. denied,* 463 U.S. 1209 (1983). When the deed is ambiguous on the question of intent, the court then may look to extrinsic evidence of the circumstances surrounding the conveyance. *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 269, 273–74, 714 P.2d 1170 (1986). When extrinsic evidence is considered, the interpretation of the conveyance becomes a mixed question of fact and law; the question of intent, however, is a factual one. *Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 571–72, 716 P.2d 855 (1986).

The deeds at issue here are ambiguous on the question of intent. The deeds themselves do not mention "railroad purposes" but speak instead of "benefits and advantages" accruing to the grantors. Clerk's Papers, at 69–70. What these "benefits and advantages" are is not unambiguously evident from the face of the conveying instruments. Thus, identifying the benefits and advantages and deciding whether they could reasonably ensue from the use of the easement as a hiking and biking trail or recreational use is a factual determination to be made by the trial court.

This case came before the Supreme Court on appeal of a CR 12(b)(6) dismissal of the plaintiffs' claims. Arguably the 12(b)(6) motion was converted into a motion for summary judgment when the trial court considered matters outside the pleadings. *See* CR 12(c). In any event, the defendants in their 12(b)(6) motion have not conceded that the conveyances were intended as easements for railroad purposes

nor has the trial court made findings in that regard. Because the parties clearly dispute the nature and extent of the interest conveyed—a dispute that is partly factual—the case belongs in trial.

The trial court's inquiry should follow basic principles of deed interpretation. If the conveyances are found to be easements, the court should consider not only the specific intentions of the original parties to the grant, but also "the nature and situation of the properties subject to the easement, and the manner in which the easement has been used and occupied." (Citation omitted.) *Logan v. Brodrick, supra* at 799. When an easement is intended for a specific use or purpose, an invalid use or purpose will violate the easement, even when the new use or purpose creates no additional burden on the servient estate. *See Brown v. Voss, supra* at 372.

The fact that the original parties' intent circumscribes the scope of an easement does not mean that any variation from the original use and burden violates the easement.

> The law assumes parties to an easement contemplated a normal development under conditions which may be different from those existing at the time of the grant. Normal changes in the manner of use and resulting needs will not, without adequate showing, constitute an unreasonable deviation from the original grant of the easement.

(Citations omitted.) *Logan,* at 800; *see also Natural Resources,* at 547 (easements are not limited to particular methods of use in vogue at time of conveyance); 25 Am. Jur. 2d *Easements and Licenses* §§ 74, 77 (1966) (when easements are in general terms without limitations, grantee or grantee's successors in interest are permitted "unlimited reasonable use"). *Cf.* 5 Restatement of Property § 484 (1944) ("In ascertaining, in the case of an easement appurtenant created by conveyance, whether additional or different uses of the servient tenement required by changes in the character of the use of the dominant tenement are permitted, the interpreter is warranted in assuming that the

parties to the conveyance contemplated a normal development of the use of the dominant tenement."). The reasonable use of an easement is a factual determination. 25 Am. Jur. 2d *supra,* § 74.

An easement for a railroad, then, may in some cases allow for a change in the type of vehicle used or the frequency of use. *See Natural Resources,* at 546–47; 25 Am. Jur. 2d, *supra,* § 74. At the same time, however, "[a] principle which underlies the use of all easements is that the owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden." 25 Am. Jur. 2d, *supra,* § 72. One could assume the grantor would never have made the conveyance if the burden on the servient estate would have been too great. Arguably, an easement "for railroad purposes" could be abused by a volume or frequency even of *railroad* traffic when that traffic is far in excess of the grantor's reasonable expectations.

In sum, the task before the trial court is to ascertain the original parties' intent with respect to the burdens they assumed and the "benefits and advantages" they anticipated. The court must look not only at the circumstances existing at the time of the grant but also at the circumstances the parties reasonably expected would develop. If the deeds are construed as requiring a particular purpose or use, the court must ascertain the natural development of that purpose or use. If the court finds that current or prospective purpose or use follows the natural and reasonable development of the estate, the court then must satisfy itself that the resulting burden on the servient estate is not materially increased. In making these factual determinations, the court should consider the nature and situation of the properties in question and the nature of the original and changed uses. *See Logan,* at 799; *see also* 25 Am. Jur. 2d, *supra,* § 74.

UTTER, J. (dissenting)—The majority errs when it concludes that cessation of the particular use of an easement

constitutes abandonment with the right to possession reverting "to the original landowner or to that landowner's successor in interest." Majority, at 450. This is not and should not be the law in Washington. There are compelling policy reasons consistent with our past cases for treating railroad easements more, rather than less, liberally than other easements. For these reasons, I would look beyond the language to the purpose of the deed.

In analogous situations, the law has recognized that changes in the use of an easement do not necessarily take the enjoyment of the easement beyond its originally intended scope. We have long recognized the paramount importance of determining the "general purposes" for which an easement was granted. *Evich v. Kovacevich,* 33 Wn.2d 151, 160, 204 P.2d 839 (1949). Parties to a private easement are presumed to have considered "a normal development under conditions which may be different from those existing at the time of the grant." *Logan v. Brodrick,* 29 Wn. App. 796, 800, 631 P.2d 429 (1981). To determine that "normal development" we consider the parties' intentions at the original creation of the easement, the nature and situation of the servient estates, and the history of the easement's use. *Logan,* 29 Wn. App. at 799 (citing *Evich,* 33 Wn.2d at 157).

By focusing only on the alleged language of the deed, a right of way for railroad purposes only, the majority too hastily confers a windfall on the abutting property owners. It is not disputed that the railroad could transfer its rights to another railroad which, in turn, could markedly increase the traffic over the servient estates. The legitimate burden presented by frequent, loud, and even dangerous, railroad use far outstrips any burden presented by foot or bicycle traffic.

While the burden on the servient estates, represented by the city's and county's plans, is far less onerous, the purpose for the easement remains unchanged. Referring to our decision in *Zobrist v. Culp,* 95 Wn.2d 556, 627 P.2d 1308 (1981), the majority rightly observes, "[w]e said the opera-

tion of a railroad is furnishing transportation, either freight or passenger, to the public." Majority, at 451. Contrary to the majority, however, I do not believe a hiking and biking trail "clearly" falls outside such a purpose, constituting abandonment of the easement.

In concluding that the railroad has abandoned its easement, the majority confuses a change in the *kind* of transportation medium using the easement with a change in the *purpose for* the transportation. Rail, foot, and bicycle traffic do represent different transportation media; that is, they represent different methods of transferring or conveying items or persons from one place to another. *See Webster's Third New International Dictionary* 2430 (1976). It cannot be disputed that all three media represent forms of transportation. A closer look at the various purposes giving rise to the need for transportation suggests that the differences between these various transportation forms are even less substantial.

As a "public highway, created for public purposes", majority, at 449 (citing *Puget Sound Elec. Ry. v. Railroad Comm'n,* 65 Wash. 75, 117 P. 739 (1911)), railroads have been used to haul freight and transport travelers bent on business or social purposes. Those purposes were often realized in the course of transit, as well as after passengers debarked. The meeting in the club car, the vacation spent sightseeing from a Domeliner, as well as local tourist and commuter trains evidence the diversity of legitimate "transportation purposes." Analogously, while many might travel the proposed trails for recreation purposes, others will use the right of way to commute to work, thus easing pressure on our other severely pressed transportation systems.

My point in this comparison is to underscore the insignificance of the difference in transportation media. Just as with a railroad line, the maintenance of a trail is to furnish transportation. In broad terms, the variety of purposes individuals may have for seeking transportation remains relatively constant regardless of the medium chosen. While

the mix of purposes may change in time, that is consistent with the evolution of society and the related use of the easement itself.

In short, I believe the majority mischaracterizes the nature of the change it maintains justifies this reversion to the abutting owners. This is *not,* as the majority asserts, a conversion "from a public transportation system to a recreational system . . ." Majority, at 451 (quoting *Pollnow v. Department of Natural Resources,* 88 Wis. 2d 350, 366–67, 276 N.W.2d 738 (1979)). The municipal bodies wish to preserve a public transportation system that uses a less burdensome mode of travel than is presently allowed. That the mix of human purposes, but not the purposes themselves, has changed, is not enough to justify declaring the easement abandoned and providing a windfall to the current property owners.

I agree with the Supreme Court of Minnesota, *see State v. Department of Natural Resources,* 329 N.W.2d 543 (Minn.), *cert. denied,* 463 U.S. 1209 (1983), that long–recognized public interest in railroads as public highways, *see Puget Sound Elec. Ry.,* 65 Wash. at 83–84, justifies protecting those rights of way for public transportation use. Like their close cousins, easements in gross, *see* Note, *The Easement in Gross Revisited: Transferability and Divisibility Since 1945,* 39 Vand. L. Rev. 109 (1986), these rights of way continue to play an important commercial and social role in linking various parts of the local community. These common policy concerns underline the well recognized need to treat more uniformly the various servitudes that have arisen in the long development of our property law. *See, e.g.,* Reichman, *Toward a Unified Concept of Servitudes,* 55 S. Cal. L. Rev. 1177 (1982) (Symposium on the Law of Servitudes).

For the above reasons I dissent.