[No. 3977-3-III.   Division Three.   July 7, 1981.]

KERMIT C. LOGAN, ET AL, *Respondents,* v. JAY B.
BRODRICK, ET AL, *Appellants.*

*Thomas E. Cooney, Jr.,* and *John C. Cooney,* for appellants.

*Roland C. Wightman,* for respondents.

McINTURFF, C.J.—Mr. and Mrs. Jay Brodrick appeal a contempt order for violating a series of court orders enjoining them from interfering with an easement.

During her lifetime, Louise Hedin owned real property located in Spokane County. Since the 1930's, and until approximately 1965 her daughter operated a small resort on that part of the property bordering Lake Spokane. Upon her death in 1963, her property passed by will equally to her daughter, her son and grandson. In 1965, Mr. and Mrs. Kermit Logan purchased the resort area from Mrs. Hedin's daughter. At about the same time, the son sold the property lying immediately adjacent on the east of the resort to Mr. and Mrs. Brodrick. The remaining property, east of

and adjacent to the Brodricks, was then sold to Mr. and Mrs. Bernard Elbert. Since the early 1930's the public has had access to the resort property. In 1965 the Brodricks granted to the Logans a perpetual easement for a road over and across their property. After the purchase by the Logans they gradually improved and expanded the resort until the Brodricks, feeling the area had become a public thoroughfare, placed posts in the road to reduce the access. For the past 8 years, the easement has been the subject of intermittent litigation.

In 1973 the Brodricks were enjoined from limiting access across the easement. The Honorable Willard J. Roe, then superior court judge, concluded the Logans were entitled to a public easement across the Brodricks' property and that the easement was to be 19 feet wide to permit 2–way traffic. Judge Roe further declared in his findings of fact and conclusions of law:

> Since the right of use by the public is based on the prior nature and extent of the user, only those types of vehicles used or *reasonably anticipated,* during and prior to 1965 may use this public access road.
>
> The volume of public traffic using the access road shall be limited to the general type of traffic using the road during and prior to 1965, and the only increases in that volume shall be on a basis consistent with increases in population and use in the Spokane area, it being the Court's finding that the rights of the [Logans] and the public shall not be *unreasonably* expanded beyond 1965 and prior levels.[1]

In November 1973, December 1973, and November 1976, subsequent court orders were required to enforce the terms of the 1973 decision. In 1980, the matter once more found its way to court. Mr. Logan alleged that the Brodricks had positioned a fence so that it intruded into the 19–foot portion of the easement, impeding the flow of 2–way traffic. The Brodricks complain that the Logans' increased use of

---

[1]The findings also stated with regard to the Brodricks' property: "[T]here must be room for two cars to pass, or a minimum of 19 feet."

the resort had unduly burdened the easement. They noted the Logans have built five new docks, multiple trailer pads, shelters, picnic fireplaces, and purchased additional fishing boats. As a result of these improvements, traffic has increased to a maximum of 80–plus vehicles for a weekend summer day. The Brodricks allege they have considerable problems with litter, unleashed dogs, speeding vehicles, and traffic obstructing their driveway.

The court found the Logans had not misused the easement. The trial judge concluded the Brodricks were in contempt and ordered them to purge their contempt by repositioning the fence to not intrude into the easement.[2]

The central issue on appeal is whether the court erred by refusing to find that the easement was being overburdened by the increased volume of traffic.

In determining the permissible scope of an easement, we look to the intentions of the parties connected with the original creation of the easement, the nature and situation of the properties subject to the easement, and the manner in which the easement has been used and occupied. *Evich v. Kovacevich,* 33 Wn.2d 151, 157, 204 P.2d 839

---

[2]Judge Ennis' oral decision of April 17, 1980 states in part: "Now, Judge Roe restrained Mr. Brodrick from obstructing or interfering with the roadway; and he provided that any relocation of the road should not reduce or diminish the public access in any manner.

". . . Now, Judge Merryman ordered that the road be maintained at a minimum of nineteen feet in width. For some reason, which is totally incomprehensible to me, Brodrick took this to mean that he should narrow the road and create a jog in it and make it difficult, and in fact nearly impossible, for two cars to pass, even though Judge Roe's Order provided for two–way traffic, . . .

"In order to purge himself of contempt, Brodrick is ordered to move his gate and remove at least four of the red fence posts to the north, and move them north so as to create a straight line between the Elberts' post and the red fence line, eliminating the jog and leaving room for two medium–sized cars or pickups to comfortably pass, . . ."

Judge Ennis also ruled:

"In regard to the increased traffic, it has increased the litter problem, and I think it's appropriate for Logan to patrol the road twice a week, and clean up the debris that his customers leave along the side of the road during the fishing season; and that if the Logans undertake to snowplow, they are not to leave a ridge or berm in the Brodrick's driveway."

(1949). It can be assumed the parties had in mind the natural development of the dominant estate. Accordingly, the degree of use may be affected by development of the dominant estate. *See* W. Burby, *Real Property* § 32 (3d ed. 1965). The law assumes parties to an easement contemplated a normal development under conditions which may be different from those existing at the time of the grant. Restatement of Property § 484 (1944);[3] *see also Cameron v. Barton,* 272 S.W.2d 40, 41 (Ky. Ct. App. 1954). Normal changes in the manner of use and resulting needs will not, without adequate showing, constitute an unreasonable deviation from the original grant of the easement. *See Michaelson v. Nemetz,* 4 Mass. App. 806, 346 N.E.2d 925, 926 (1976).

■■ The question of reasonable use or unreasonable deviation is one of fact. *See* 2 G. Thompson, *Real Property* § 426 (1980). The servient owner, here the Brodricks, has the burden of proving misuse. We find no express assignment of error to the court's finding:

> I can't find that the increase in traffic is unreasonable, given the population increase, and particularly given the propensity that people have toward outdoor recreation that has occurred here in the last fifteen years.

Since no assignment of error was made under RAP 10.3(a) this finding may be treated as established fact on appeal. *Industrial Hydraulics v. Aberdeen,* 27 Wn. App. 123, 126, 619 P.2d 980 (1980). However, when considering the reasonable scope of an easement courts will ask whether the extent of use should have been reasonably contemplated by the original parties. Changes in surrounding conditions and modernization of recreational vehicles are to be reasonably contemplated. *See* 25 Am. Jur. 2d *Easements and Licenses*

---

[3]Restatement of Property § 484 states:

"In ascertaining, in the case of an easement appurtenant created by conveyance, whether additional or different uses of the servient tenement required by changes in the character of the use of the dominant tenement are permitted, the interpreter is warranted in assuming that the parties to the conveyance contemplated a normal development of the use of the dominant tenement."

§ 115 (1966). Here, the Brodricks purchased the servient estate with notice the resort was established. Even though the Brodricks point to increased use of the access easement, we are unable to find from the facts that the present use is unreasonable.

Judgment of the Superior Court is affirmed.

GREEN, J., and EDGERTON, J. Pro Tem., concur.

Reconsideration denied August 28, 1981.