[No. 19188-5-III.   Division Three.   July 10, 2001.]

WILLIAM E. RICHARDSON, ET AL., *Appellants*, v. HAROLD COX, ET AL., *Respondents*.

882

*Harvey Faurholt*, for appellants.

*John G. Schultz* and *George Fearing* (of *Leavy, Schultz, Davis & Fearing*) and *Steven M. Lowe, Prosecuting Attorney for Franklin County*, and *Darin R. Campbell, Deputy*, for respondents.

SCHULTHEIS, J. — A property owner's dedication of land is a purposeful relinquishment of land for general and public use. The owner cannot reserve to himself any rights other than those compatible with the full exercise and enjoyment of the public uses to which the property has been devoted. RCW 58.17.020(3). On the other hand, an easement is a nonpossessory right to use in some way another's land without compensation. *City of Olympia v. Palzer*, 107 Wn.2d 225, 229, 728 P.2d 135 (1986). Regarding an easement, " '[t]he respective rights of the two parties . . . are not absolute, but must be construed to permit a due and reasonable enjoyment . . . so long as that is possible.' " *Thompson v. Smith*, 59 Wn.2d 397, 408-09, 367 P.2d 798 (1962) (quoting *City of Pasadena v. California-Michigan Land & Water Co.*, 17 Cal. 2d 576, 583, 110 P.2d 983, 133 A.L.R. 1186 (1941)).

William and Lila Mae Richardson purchased a residential five-acre lot. The deed reserved a 30-foot easement for ingress and egress. Adjoining landowners to the west, Harold and Bonnie Cox, nonetheless constructed a roadway along the easement with the approval of Franklin County. The question before us is whether original quitclaim deeds (which reserved the easement for ingress and egress) and a later filed "Declaration of Protective Covenants and Restrictions" (which provided for a roadway easement) amounted to a dedication of the easement for public purposes. We conclude that they do not and so reverse the judgment of the trial court and remand the case for reinstatement of the trial court's initial memorandum decision. The trial court must award the Richardsons their attorney fees and costs at the trial level and apportion them between Mr. Cox and the County. The Richardsons' request for

attorney fees and costs on appeal is granted subject to compliance with RAP 18.1.

## FACTS

Harold and Bonnie Cox and William and Lila Richardson own adjacent property on the outskirts of Pasco, Washington, in Franklin County. The Richardsons own Lot 1, a five-acre parcel that is part of a small subdivision developed by a predecessor in interest, Robert A. Tippett.[1]

Mr. Tippet filed a professional survey of his planned residential subdivision but he did not ever formally plat the property. He also filed a Declaration of Protective Covenants and Restrictions (hereinafter Declaration) that applied to the five-acre residential lots, including Lot 1, the Richardsons' property.

The following portion of the Tippett Declaration is pertinent to our analysis:

4. EASEMENTS

*Easements for roadways* and installation and maintenance of utilities, irrigation and drainage facilities *30 feet in width are reserved* along all lot lines and are shown on the recorded plat.[2] Within these easements no structure, planting or other materials shall be placed or permitted to remain which may damage or interfere with the installation and maintenance of utilities or which may change the direction of flow of water through drainage channels in the easements.[3]

This section of the Declaration reflects part of the language found in the reciprocal quitclaim deeds between the original

---

[1] Robert Tippett and Harold Thompson originally co-owned the eastern half of Section 8, Township 9 North, Range 30 East, W.M., located in Franklin County. The two divided the half section into two quarter sections in 1977 and the action was recorded in quitclaim deeds. Mr. Tippett was granted the northeastern quarter section and Mr. Thompson was granted the southeastern quarter section. The Ashley Trust now owns Mr. Thompson's quarter section. A portion of Mr. Tippett's quarter section was subdivided into residential lots. Lot 1, purchased by the Richardsons, is the parcel at issue in this appeal. The rest of the Tippett land is currently owned by the Thanksgiving Limited Partnership, which is run by Mr. Tippett's son, Robert (Bob) M. Tippett.

[2] The parties agree a plat was never recorded.

[3] Clerk's Papers (CP) at 16 (emphasis added).

landowners (Mr. Tippett and Mr. Thompson), which had reserved "a 30 foot road right of way for ingress and egress along the westerly boundary thereof."[4] Mr. Tippett and Mr. Thompson recognized that the road right-of-way was necessary to ensure that no parcel of land would become landlocked. Accordingly, the deed to the Richardsons' property notes the easement for ingress and egress.

The Coxes own the western half of Section 8, which lies immediately west of the Richardson/Thanksgiving/Ashley Trust properties. Mr. Cox dedicated to the County a 30-foot wide parcel of land on the eastern border of his property that runs the entire length of Section 8. This dedicated property abuts the 30-foot road right-of-way easements running along the western edge of the Richardson/Thanksgiving/Ashley Trust properties. Mr. Cox contemplated that a county road would eventually be built along his dedicated portion and the 30-foot easements across the Richardson/Thanksgiving/Ashley Trust properties.

The following map, which is not drawn to scale, is included for ease of reference:

---

[4] Exs. 1 & 2.

The Coxes have developed significant agricultural businesses on their property. They sold parcels of their land to others who also developed sizeable commercial agricultural businesses on the property. Mr. Cox determined that the rise in commercial development necessitated the building of a north-south county road that would connect his property to the main arterials in the area, Commercial Avenue, Foster Wells Road, and SR 395. Mr. Cox wanted the road built in order to handle the heavy commercial truck traffic necessitated by the commercial properties he owned.

On several occasions Mr. Cox approached Franklin County officials to request that the County build a road down the center of Section 8. The County consistently declined, citing inadequate funding for the project. In 1997, Mr. Cox volunteered to build the road at his own expense if the County would provide engineering services and supervise the construction, to which the County agreed.

As mentioned above, the entire 30-foot road easement on Mr. Cox's property had been properly platted and dedicated to the County for use of a public road. The Richardson/Thanksgiving/Ashley Trust properties, however, had only the 30-foot road right-of-way easement for ingress and egress, which had been noted on the survey map but never platted or dedicated. Accordingly, the County requested and received waivers, pursuant to RCW 36.81.030, from the Thanksgiving and Ashley Trust property owners to build the road down the center of Section 8. However, the County neither sought nor was given permission to build the road on the 30-foot easement across the Richardsons' property.

Despite this irregularity, the County designed and staked the road down the center of Section 8 for Mr. Cox. Mr. Richardson immediately removed the stakes from his property. The County again staked the Richardson property and Mr. Cox dug the road according to the County specifications. This was done while the Richardsons were out of town on vacation. The construction across the Richardson property required removal of some of the Richardsons' fixtures,

including a tree, irrigation lines, and a fence. The road was completed in July 1997.

The road was eventually dedicated to Franklin County after a petition and hearing process pursuant to chapter 36.81 RCW. The County accepted the road, which extended Commercial Avenue at the Pasco city limits to Foster Wells Road.

Claiming damages as a result of the road construction, the Richardsons commenced a lawsuit against the Cox and Tippett families as well as the Thanksgiving Limited Partnership on January 23, 1998. The complaint was later amended to add the County as a defendant.

A bench trial on the merits of the Richardsons' complaint was held in Franklin County Superior Court in August 1999. At the conclusion of the trial, the court initially issued a memorandum decision substantially in the Richardsons' favor, concluding that the road right-of-way easement reserved in their deed would have been limited to property "legally described in the declaration of protective covenants and restrictions."[5] The court determined that the Coxes were not authorized to use the easement for business interests that were not connected with the purpose for which the easement was created (i.e., for ingress and egress to the properties to the south of the Richardson property). The court initially found that the Coxes' use of the easement for commercial truck traffic constituted a misuse of the easement by "overburdening it."[6] It ordered the County to pay the Richardsons the fair market value of the 30-foot strip of land across the western border of their property.

The County moved for reconsideration. However, before arguments on the motion were heard, the court changed its mind. It concluded that the Declaration, which "dedicated" a "right-of-way" reflected an intention on the part of the original landowners (Mr. Tippett and Mr. Thompson) to permit development of a public road across the easement.

---

[5] CP at 57.

[6] CP at 58.

The pertinent findings are:

### IX.

The Court finds that the use of the words "dedicated right-of-way" in relation to "driveways" in Paragraph "N", referred to those "easements for roadways and installation and maintenance of utilities, irrigation and drainage facilities, 30 feet in width . . . reserved along all lot lines and are shown on the recorded plat."

### X.

It is in the [D]eclaration itself that the dedication of roadways is established, and the only other method for establishing a roadway would be a dedication. The drafter of the [D]eclaration inadvertently used the word "plat".

It was intended at the time the property was subdivided that a public roadway would be established in the area in question.

### XI.

The Thompson-Tippett partition deed, dated May 23, 1977, reserved a 30-foot road right-of-way for ingress and egress. The use of the word "road" coupled with the width thereof, indicates a road open to the public was intended.[7]

The pertinent conclusions are:

### III.

The use of the words "dedicated right-of-way" in relation to "driveways" in Paragraph "N" referred to in those "easements for roadways and installation and maintenance of utilities, irrigation and drainage facilities 30 feet in width . . . reserved along all lot lines and are shown on the recorded plat . . ."

### IV.

The [D]eclaration establishes that dedicated roadways were intended and dedicated roadways mean a thoroughfare for the use of the public.[8]

## DISCUSSION

■ Our review here is de novo because the court relied on written documentation (the reciprocal Tippett/Thomp-

---

[7] CP at 129-30.

[8] CP at 131.

son quitclaim deeds, the Tippett survey, and the Tippett Declaration) that had been recorded in Franklin County for its essential findings and conclusions. As such, we are in as good a position as the trial court to pass upon the legal effect of those documents (i.e., did they reserve and dedicate a public roadway or did they instead reserve only a right for ingress and egress for pertinent landowners). *See Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989).

■■ We begin by noting the well-established principle in Washington that, in general, conveyances of real property must be in written form. RCW 64.04.010. The original purpose of the real estate statute of frauds was to provide proof that the alleged agreement was made. Another purpose serves a cautionary function, by bringing home the significance of the conveyance, which would prevent impulsive action. *See* II E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 6.1, at 85 (1990). More importantly, the purpose behind the statute is to prevent the fraud that may arise from the uncertainty inherent in oral contractual undertakings. *Miller v. McCamish*, 78 Wn.2d 821, 828, 479 P.2d 919 (1971). Because an easement is an interest in land, it must be conveyed by written deed. RCW 64.04.020; *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995).

### Dedication

The respondents maintain that the reservation for ingress and egress found in the quitclaim deed, when read in conjunction with the recorded Tippett Declaration, signals a clear intent to dedicate the 30-foot easement across the Richardson/Thanksgiving/Ashley Trust properties as a roadway for public use. We disagree.

■ ■ A common law dedication is the designation of land, or an easement on such land, by the owner, for the use of the public, which has been accepted for use by or on behalf of the public. A dedication may be either express (i.e.,

the intent is expressly set forth in a deed, or by oral or written declaration) or implied (i.e., evidenced by some act or course of conduct by the property owner from which a reasonable inference of dedication may be drawn). BLACK'S LAW DICTIONARY 412 (6th ed. 1990). A statutory dedication must be made in conformity with the laws regulating the property. *Id.* at 413.

By dedicating the property, the owner reserves no rights that would either be incompatible or interfere with the full public use. The intent to dedicate property for public use is evidenced by presenting for filing a final plat or short plat that shows the dedication on its face. Acceptance by the public is evidenced by approval of the final plat or short plat for filing with the appropriate governmental unit. RCW 58.17.020(3).

A party asserting that a dedication exists has the burden of establishing that all the essential elements are present under the facts of the case. *Karb v. City of Bellingham*, 61 Wn.2d 214, 218-19, 377 P.2d 984 (1963). The owner's intent to dedicate will not be presumed; the party asserting it must prove the intent is unmistakable. *See Cummins v. King County*, 72 Wn.2d 624, 627, 434 P.2d 588 (1967).

A public roadway is most often dedicated as part of the process of platting a subdivision. Frequently, the municipality will require, as a condition of approval of the subdivision, a provision for public roadways. *See* 6 WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 91.3(2)(a) (3d ed. 1996). Mr. Tippett's subdivision was surveyed, but a formal plat or short plat was never presented for approval. There is no evidence in the record that the County required a road dedication from Mr. Tippett prior to approving his planned residential subdivision.

Washington's subdivision statute, chapter 58.17 RCW, prohibits conveyance of real property to the public for any general or public use unless there has been a dedication, signed by all parties with an ownership interest in the land, that is clearly shown on the final plat. *See* RCW

58.17.020(3), .165. Here, no such wording appeared on the face of the survey and no final plat or short plat document was ever recorded. As such, there is no evidence that an express dedication for public access across the Richardson/Thanksgiving/Ashley Trust properties occurred. Further, the recorded survey, the Declaration, and the original partitioning quitclaim deeds do not suggest that Mr. Tippett intended to dedicate the easements, set forth in each lot, to the County for a public roadway.

█ Nor do we find evidence in this record that a dedication should be implied by the actions of the parties. There is no evidence that the public or even the adjacent landowners ever used the easement across the Richardsons' property. As a result, we find that the access easement across the Richardsons' property was never dedicated to Franklin County to build a public road.

## *Easement*

What the documents in this case evidence is an intent to reserve easements for ingress and egress to the other parcels contained in the residential subdivision as well as the properties located to the south of the surveyed subdivision. The Declaration clearly contemplated future residential development and, as such, reserved the easement for ingress and egress for other residential owners in the development to prevent the individual lots set forth in the survey from becoming landlocked.

█ The reservation of the easements in the survey and Declaration is general. As a result, the public's use of the easements is limited to that which is reasonable. *Logan v. Brodrick*, 29 Wn. App. 796, 800, 631 P.2d 429 (1981). The use of an easement can be expected to expand and grow only with the natural development of the dominant estate. *Id.* In its original memorandum decision the trial court correctly determined that Mr. Cox's use of heavy, commercial truck traffic misused and overburdened the easement resulting in trespass as a matter of law. *Brown v. Voss*, 105

Wn.2d 366, 372, 715 P.2d 514 (1986). It fixed damages for the trespass at $5,000 in addition to the costs of the damage to the Richardsons' irrigation system, and removal of the tree. We agree the Richardsons are entitled to these amounts plus a proportionate amount of attorney fees pursuant to RCW 4.24.630 for bringing the trespass issue to trial. Moreover, the trial court correctly determined in its first memorandum decision that absent the Richardsons' dedication of this roadway to the County for use by the public, they are entitled to just compensation for the taking. *Dean v. Lehman*, 143 Wn.2d 12, 31, 18 P.3d 523 (2001). The amount of damages was determined as $3,310. The County owes this amount to the Richardsons as well as a proportionate award of attorney fees and costs pursuant to RCW 8.25.070(4) and .075(3) related to bringing the takings issue to trial. *See Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 666-67, 935 P.2d 555 (1997).

The judgment of the trial court is reversed and the case remanded for reinstatement of the trial court's original memorandum decision with the addition of attorney fees and costs at the trial court as outlined above. The Richardsons' request for attorney fees and costs on appeal is granted subject to compliance with RAP 18.1. The Respondents are jointly and severally liable for the fees and costs awarded on appeal.

BROWN, A.C.J., and SWEENEY, J., concur.

After modification, further reconsideration denied November 15, 2001.

Review denied at 146 Wn.2d 1020 (2002).