[No. 29126-0-III.   Division Three.   June 21, 2011.]

WILSON & SON RANCH, LLC, *Appellant*, v. PHILLIP M. HINTZ ET AL., *Respondents*.

298

*John M. Groen* (of *Groen Stephens & Klinge LLP*), for appellant.

*Nicholas L. Wallace* (of *Schultheis Tabler Wallace PLLC*), for respondents.

¶1 SIDDOWAY, J. — Wilson & Son Ranch LLC appeals a judgment determining that Phillip and Shannon Hintz hold both an express easement that partly coincides with a

gravel road running across Wilson's estate as well as an easement by prescription to use the portions of that road not covered by the express easement. Wilson also challenges the trial court's ruling that the Hintzes' use of their property for hosting temporary outdoor events such as weddings does not exceed the scope of the express easement. Because we find that the Hintzes' business does not exceed the scope of the easement and that Wilson's other arguments have not been properly preserved for review, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 This appeal concerns a parcel of land near Moses Lake known as "Farm Unit 55, Block 40." A current map of this property is depicted below.

Ex. 1 (digital alterations ours).

¶3 At the northeastern corner of this parcel is the beginning of "Private Road 11.5," the only means of accessing the property at all times relevant to this appeal. This gravel road proceeds west from Stratford Road along the northern boundary of the property. At about the midpoint of the northern boundary line, the road veers in a southwesterly direction until reaching the western boundary of the property.

¶4 Herman Jones purchased Farm Unit 55, Block 40 in 1968. In 1973, Mr. Jones sold the eastern portion of the property to Darrell and Alice Larson, while retaining the western portion for himself. Mr. Jones reserved an appurtenant easement in the deed conveying title to the eastern portion of the property that provided "[n]on-exclusive easement for ingress and egress over and across a strip of land 20 feet in width." Ex. 2. The legal description of the easement's location did not cover the entirety of the gravel road Mr. Jones used to access his property. The map above approximates the actual location of the express easement as agreed upon by the parties at trial.

¶5 Mr. Jones continued to use the gravel road to access his property, primarily for hunting purposes, until he sold his remaining parcel to Colin Skane in 1978. He was aware that Mr. Skane intended to operate a commercial fish hatchery on the property at the time of sale. Mr. Skane utilized the land as such until 1990. At that time, he sold the property to its current occupants, respondents Phillip and Shannon Hintz.

¶6 Mr. Hintz continued the fish hatchery business for the next 11 years. Much like Mr. Skane, Mr. Hintz's business invitees regularly used the gravel road to conduct business on the property. In 2001, the Hintzes ended their fish hatchery business and began hosting temporary outdoor events, such as weddings, on their property. They currently operate this business through a limited liability company, Hidden Meadow LLC. Also in 2001, the Hintzes would convey a substantial part of their property to the Grant County Public Utility District.

¶7 Meanwhile, the eastern parcel of Farm Unit 55, Block 40 was sold by the Larsons and eventually came into the possession of Randy Knopp in 1995. He would use this property for agricultural purposes until 2001, when he sold the property to Walters Land & Livestock LLC. Walters would sell this property in March 2007 to the current owner, appellant Wilson & Son Ranch LLC.

¶8 In 2007, the Hintzes obtained a conditional use permit (CUP) from the Grant County Board of Commissioners permitting them to host up to 28 outdoor events each year. The Hintzes had been previously limited to conducting 4 or fewer of these events per year by county ordinance. After obtaining the permit, they conducted 18 events in 2007, 19 in 2008, and 14 in 2009. An average of 30 to 60 vehicles used the gravel road to reach the Hintzes' property for each event. However, the annual amount of commercial traffic utilizing this road has not substantially differed from their previous business.

¶9 In 2009, Wilson sued to enjoin the Hintzes' use of the easement for the outdoor events business, arguing that their use of the gravel road for this purpose exceeded the scope of the easement. The Hintzes disputed this contention and counterclaimed that they had acquired an easement by prescription in the gravel road after learning that the road did not completely coincide with the express easement. They also sought to utilize their express easement by widening a portion of the gravel road and claimed that Wilson must remove a center pivot irrigation structure for that expansion because the structure is located within the express easement.

¶10 The trial court sided with the Hintzes on these issues. It concluded that their use of the property for temporary outdoor events was within the scope of the easement. It also found that a prescriptive easement had been established for any portions of the gravel road outside of the express easement, and that Wilson would be required to remove its center pivot structure within 60 days after

receiving written notice from the Hintzes because it lies within their express easement. This appeal followed.

## ANALYSIS

¶11 Wilson contends that (1) the Hintzes do not have a prescriptive easement because the original owners of the two estates mutually consented to make the express easement fully coincide with the gravel road and (2) the Hintzes' outdoor events business exceeds the scope of the express easement.

### I

¶12 Wilson first argues that the trial court erred in finding that the Hintzes hold a prescriptive easement to use the portions of the gravel road lying outside of their express easement. It suggests that the Hintzes actually hold an express easement covering the gravel road in its entirety because the original owners of the two estates mutually consented to shift the express easement to coincide with that road. Therefore, Wilson argues, the trial court erred by ordering its irrigation pivot located in the legal description of the easement to be removed. The Hintzes respond that we should decline to consider this argument, not only because it was not raised before the trial court but because it is also factually inconsistent with Wilson's position below.

¶13 Generally, appellate courts will not entertain issues raised for the first time on appeal. RAP 2.5(a); *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441, 191 P.3d 879 (2008). The reason for this rule is to afford the trial court with an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Similarly, we do not consider theories not presented below. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991).

¶14 Here, the trial record lacks even a semblance of Wilson's "shifting easement" argument now raised on ap-

peal.[1] Wilson's amended complaint and accompanying trial brief challenged only the Hintzes' commercial use of the easement and the issue again went unmentioned in Wilson's reply briefing. Wilson asserts that it "has always alleged that the express easement . . . is the actual gravel road," Reply Brief of Appellant at 12, yet multiple statements made in its trial court briefing belie this claim.[2] The record makes clear that both parties agreed the express easement coincides with the portion of the gravel road that runs east to west, but runs just south of and parallel to the southwesterly portion of that road.

¶15 Wilson not only maintained at trial that a portion of the express easement ran just south of the gravel road, it stipulated to the same:

> Judge, one other thing that we're going to stipulate to . . . is that a center pivot irrigation system was installed by my clients in the easement that was reserved. It's not on the roadway being used, but it's in the easement that we've been referring to.

Report of Proceedings at 19. While this stipulation might not be inconsistent with Wilson's current assertion that the express easement was relocated had Wilson clearly distinguished between the easement as originally reserved and the easement as it should be construed in light of a mutually agreed relocation, it never made that distinction below. Absent that distinction, the stipulation is inconsistent with Wilson's current position.

¶16 Permitting Wilson to raise this argument for the first time on appeal would also result in a significant injust-

---

[1] Wilson also hints that we should reformulate the deed because the parties intended that the gravel road constitute the express easement, but this argument likewise was not raised below.

[2] Wilson states in its memorandum of authorities submitted to the trial court that "[a]n irrigation pivot erected by Wilson & Son Ranch, LLC, on its own property but subject to an easement that has never been used should not be ordered removed until use of the easement is required and necessary for its intended use," and that "the Hintz[e]s have never established use of the easement for access to their property, nor is there a current need for the easement, as the Hintz[es] instead use a road adjacent to the easement that provides them ample access as a right of way." Clerk's Papers at 56, 58.

ice to the Hintzes, as they were never on notice that a record needed to be made on this issue—indeed, they could have reasonably concluded that it was unnecessary to do so given Wilson's stipulation. Accordingly, we decline to consider this argument for the first time on review. RAP 2.5(a).

## II

¶17 Wilson's main point of contention is that the Hintzes' outdoor events business exceeds the scope of their express easement.[3] It argues that the business is outside of the scope of the easement because it requires a CUP to operate, it needs a widening of the gravel road to function properly, and the easement should be limited to agricultural uses. The Hintzes respond that the easement contains no express limitations on its use; that Mr. Jones, the original owner of the dominant estate, understood the easement to permit commercial uses; and that temporary outdoor events are allowed in Grant County agricultural zones without a permit.

*Standard of Review*

¶18 We review the scope of an express easement as a mixed question of fact and law. *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005); *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). "What the original parties intended is a question of fact and the legal consequence of that intent is a question of law." *Sunnyside*, 149 Wn.2d at 880. Findings of fact are reviewed under a substantial evidence standard, which requires that "there be a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true." *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008). Uncontested findings are verities on appeal. *In re Interest of Mahaney*, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

---

[3] We note that Wilson does not allege that the Hintzes' outdoor events business exceeds the scope of their prescriptive easement over the portions of the gravel road not coinciding with the express easement.

*The Hintzes' Business Has Not Exceeded the Scope of Their Easement*

¶19 Our primary objective when determining the scope of an easement is to effectuate the intent of the parties who created it. *Butler v. Craft Eng Constr. Co.*, 67 Wn. App. 684, 698, 843 P.2d 1071 (1992). When there is specific, unambiguous language creating an easement, that language may be determinative of the permitted uses and, thus, the parties' intent as to its scope. *See Niemann*, 154 Wn.2d at 374. If the language creating the easement is ambiguous regarding permissible uses, as is the case here, the parties' intent may be determined by certain factors outside the terms of the grant. *Logan v. Brodrick*, 29 Wn. App. 796, 799-800, 631 P.2d 429 (1981).

¶20 When utilizing extrinsic evidence to determine the scope of an easement, "we look to the intentions of the parties connected with the original creation of the easement, the nature and situation of the properties subject to the easement, and the manner in which the easement has been used and occupied." *Id.* at 799.

¶21 We consider these factors while bearing in mind that the law assumes parties to an easement contemplated changes in its use that may not have existed at the time of the grant. *810 Props. v. Jump*, 141 Wn. App. 688, 696-97, 170 P.3d 1209 (2007) (citing *Logan*, 29 Wn. App. at 800). "Normal changes in the manner of use and resulting needs will not, without adequate showing, constitute an unreasonable deviation from the original grant of the easement." *Logan*, 29 Wn. App. at 800.

¶22 A review of the trial court's findings leads us to agree that the Hintzes' outdoor events business has made permissible use of their express easement. Wilson disputes its finding that Mr. Jones, the creator of the easement, did not intend to limit its scope, but that finding is supported by substantial evidence. The express language in the deed placed no limitations on its use other than that it be used for ingress and egress. Further, Wilson does not contest the

trial court's finding that Mr. Jones believed that the easement was sufficiently broad in scope to permit a commercial fish hatchery to be operated on the dominant estate, making it a verity on appeal.

¶23 Wilson claims that the easement should be limited to agricultural uses based on the prior activities conducted on the dominant and servient estates, but nothing in the record suggests that the original parties to the easement intended such a limitation. Even if we did construe the easement to be restricted to agricultural uses, a limited number of temporary outdoor events may be conducted without a permit on land zoned "agricultural" in Grant County, which includes the Hintzes' estate. Wilson challenges only the character of the Hintzes' business, not the number of events held on the Hintzes' property. The fact that Grant County issued a CUP permitting a greater number of events does not change the character of the activity, which is a use permitted under the county's zoning regulations.

¶24 Wilson last argues that the Hintzes' plans to widen the gravel road amounts to a concession that their business exceeds the scope of their easement, but there are two flaws with this argument. First, it assumes that the business cannot function without a widening of the road. This is clearly not the case given its successful operation over the past several years. Second and more importantly, it overlooks the fact that the Hintzes are not attempting to widen their express easement beyond the 20-foot width specified in the deed—they are seeking to make full use of that easement in addition to the prescriptive easement they now hold.

¶25 The trial court's uncontested findings reflect that this easement has been continuously used for commercial purposes over the past three decades. Limiting its scope as Wilson urges would require us to ignore our past decisions permitting changes in the use of an easement absent a showing of an unreasonable deviation from the original grant. Wilson has not shown that the original parties so

intended to limit the easement, nor has it demonstrated that the use of the easement has meaningfully increased at all, let alone in an unreasonable manner.

¶26 The Hintzes have not exceeded the scope of their express easement by conducting a temporary outdoor events business on their property. The trial court's judgment is affirmed.

KULIK, C.J., and SWEENEY, J., concur.