
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEFFREY V. HORN and KRISTINA I. HORN, husband and wife, | ) ) ) | No. 34908-0-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STEVEN F. SCHROEDER, a married person, as his sole and separate property, | ) ) ) | |
| Appellant. | ) | |

FEARING, J. — Steven Schroeder appeals from the trial court's temporary limit of the width of his easement across his neighbors' property. We affirm the trial court's ruling.

FACTS

This statement of facts arises primarily from the trial court's findings of fact. Appellant Steven Schroeder assigned no error to any of the findings.

Decades ago the Braucher family owned and farmed acres in the Williams Lake Road area of Stevens County. Eventually the family divided the land into two parcels, an east tract and a west tract.

Access to the east parcel arises from an easement for ingress, egress and utilities created in a July 1983 recorded real estate contract among Braucher siblings. The contract defines the easement as:

> TOGETHER WITH a perpetual, non-exclusive forty (40) foot easement for ingress, egress and utilities, and the right to maintain same, commencing at Williams Lake Road, thence in an Easterly direction over and across the now existing road on the North forty (40) feet of Government Lot 2, in Section 30, Township 37 North, Range 39, East, W.M., to the SE ¼ NW ¼ of Section 30, Township 37 North, Range 39 East, W.M. Said easement shall be appurtenant to the SE ¼ NW ¼ of Section 30, Township 37 North, Range 39 East, W.M.

Exhibit 105. The Braucher family intended the easement to provide access from Williams Lake Road across the west parcel to the east tract, which otherwise would be land-locked. Importantly, the Brauchers intended the easement to permit residential development of the east track when determined by future owners of the parcel.

At some unknown date, an unpaved road arose along the easement to permit traffic to travel from Williams Lake Road easterly to the east parcel. Before the road enters the east parcel, a branch of the road moves at a forty-five degree angle to the southeast and serves as the driveway for the west parcel's home. The division in the road occurs about two-thirds of the distance across the west parcel. To date, and along the entire length of the road across the west parcel, the width of the path has been limited to twelve to fourteen feet, including the area used for maintenance. Owners of the west parcel have employed the remaining width of the road for pasture.

By 2015, Steven Schroeder, on the one hand, and Jeffrey and Kristina Horn (the Horns), on the other hand, owned the respective parcels. In 1993, Steven Schroeder acquired title to the east tract consisting of 41.9 acres. Schroeder plans to divide his 41.9 acres into five acre parcels in the indefinite future. The Horns bought the west parcel, comprising 14.4 acres, in early 2015. The Horns' 2015 deed recognized the encumbrance of the easement in favor of Schroeder's land.

Steven Schroeder's property remains undeveloped. Schroeder, though, presently rents to two tenants. Renter Anthony Bell lives in a cabin, and tenant Gordon Foster resides in a trailer on a seasonal basis. Bell, Foster, and their respective visitors use the access easement across the Horn land. The presence of grass on the easterly one-third of the access road evidences limited traffic to the Schroeder or east parcel.

Jeffrey and Kristina Horn and the predecessor owners of the west parcel have devoted the 14.4 acres to pasturing horses. Previous land owners constructed external and internal fences on the property to confine the horses. One fence runs parallel to the access road. The Horns currently own five horses. Their son competes in equine events.

The road accessing the Schroeder parcel employs three separate gates. Jeffrey and Kristina Horn erected gate one to prevent their horses from escaping. This gate lies midway between Williams Lake Road to the west and the boundary with Steven Schroeder's land. Gate two lies immediately to the east of where the Horns' driveway branches to the southeast. The Horns' predecessor in interest erected the gate years ago.

3

Gate three lies at the eastern end of the access road just inside Schroeder's property. Schroeder uses gate three to keep his cattle on his property.

Steven Schroeder, on the one hand, and Jeffrey and Kristina Horn, on the other hand, hold differing viewpoints on the purpose and scope of the access easement. Schroeder believes that, as the dominant estate holder, he can use the entire forty foot easement. The Horns deem the access road limited to twelve to fourteen feet and only for the purpose of utilities. These incompatible stances piloted pugnacious deportment.

On February 20, 2015, Steven Schroeder abruptly moved Jeffrey and Kristina Horns' internal fence running parallel to the access road twenty feet to the south, but still parallel to the road. The transplanting of this fence severed a twenty foot swath of the Horn's horse pasture. Schroeder also removed gates two and three. Schroeder performed the movement and removement for the purpose of expanding the width of the access road to forty feet. Thereafter, the Horns installed an unlocked gate along the access road.

On August 18, 2015 Jeffrey Horn and some colleagues menaced Steven Schroeder and his tenant, Anthony Bell, by displaying a rifle scope pointed in the direction of Bell's cabin. On August 20, Steven Schroeder cursed and threatened Jeffrey and Kristina Horn and the couple's ten-year-old son. Schroeder yelled: "'I'm going to kill you, the kid, and horses.'" "'I'll run you out of this country.'" CP at 184.

During August 2015, Jeffrey and Kristina Horn cluttered and impeded passage on the easement. The couple dumped cat litter, chicken waste, and horse manure on the

access road. They laid tree limbs across the easement and installed wire gates across the road. Steven Schroeder responded by repeatedly cutting the wire.

In early September 2015, Steven Schroeder's tenant, Gordon Foster, stopped his vehicle and attempted to move tree limbs placed across the road. Foster enjoys limited use of his legs and fell as he stooped. An ambulance transported Foster to a hospital. Jeffrey and Kristina Horn obtained an anti-harassment order against Steven Schroeder, which reduced the neighborhood scrum.

PROCEDURE

In August 2015, Jeffrey and Kristina Horn filed a complaint against Steven Schroeder for damages resulting from trespass and for declaratory and injunctive relief. The Horns sought a declaration as to the party's rights with regard to the width and use of the easement. They also sought an injunction prohibiting Schroeder from further destruction to their gates and to restore existing fencing and gates. Steven Schroeder denied any trespass and claimed that, under the easement, he had the right to remove any impediment to the full forty feet of the easement. He sought relief from the Horns' conduct.

Following a bench trial, the trial court ruled:

> The historic width of the traveled easement is 12' to 14' in width, which includes room for maintenance. This shall be the width of the easement road running east beyond the established driveway running east from Williams Lake Road to the residence of Jeffrey V. Horn and Kristina I. Horn, husband and wife. The 12' to 14' traveled easement road, running

from Williams Lake Road to the Schroeder property, Tax Parcel 2339200, can be broadened up to 40' when the 41.9 acres presently owned by Steven F. Schroeder is developed—when the property is formally divided.

. . . The gate(s) and fences shall be installed and erected by Steven F. Schroeder as they were located when Jeffrey V. Horn and Kristina I. Horn acquired their property on January 16, 2015. Steven. F. Schroeder shall complete installation and erection of the gate and fences within 30 days of the entry of this ruling. The gate and fences shall be of at least the same quality as those removed, or moved. Further, a gate shall be of light aluminum construction, which opens and closes easily, and which can be fastened in either direction.

. . . The remaining damages to the property of Jeffrey V. Horn and Kristina I. Horn, namely the destruction of [g]ate 1 in the amount of $309.99 is offset by the damage to the easement road in the form of obstructions placed on the easement road, including the wire fences. No damages are awarded either party under RCW 4.24.630.

CP at 188-89.

## LAW AND ANALYSIS

Steven Schroeder assigns error to the trial court's limiting his use of the forty foot easement for access to twelve to fourteen feet until he formally plats his acreage for development and to ordering him to reinstall gates and fencing he removed from the easement. We discern only one limited error.

Steven Schroeder asks that we enforce the entire forty foot easement granted to his west land in the 1983 real estate contract, prevent Jeffrey and Kristina Horn's use of the entire forty feet, and permit him to grade and guard the access as he sees fit. Schroeder's argument, however, ignores the legal principle that the servient landowner still holds

6

rights to use of land crossed by an easement. The dominant landowner lacks full control over the land within the easement.

A servient land owner may use his property in a reasonable manner that does not interfere with the purpose of the easement. *Littlefair v. Schulze*, 169 Wn. App. 659, 665, 278 P.3d 218 (2012). Whether or not the owner of land, over which an easement exists, may erect and maintain fences, bars, or gates across or along the path of an easement depends on the intention of the parties connected with the original creation of the easement as shown by the circumstances of the case, including the nature and situation of the property subject to the easement and the manner in which the parties have used and occupied the way. *Evich v. Kovacevich*, 33 Wn.2d 151, 162, 204 P.2d 839 (1949).

When determining the scope of an easement we seek to effectuate the intent of the parties who created it. *Butler v. Craft Engineering Construction Co.*, 67 Wn. App. 684, 698, 843 P.2d 1071 (1992). When specific, unambiguous language creates an easement, that language may determine the permitted uses and the parties' intent as to its scope. *Wilson & Son Ranch, LLC v. Hintz*, 162 Wn. App. 297, 305, 253 P.3d 470 (2011). If the language creating the easement is ambiguous regarding permissible uses, the parties' intent may be determined by factors outside the terms of the grant. *Logan v. Brodrick*, 29 Wn. App. 796, 799-800, 631 P.2d 429 (1981).

The express easement created in the 1983 real estate contract granted a perpetual, nonexclusive, forty foot easement for ingress, egress and utilities with the right to

7

maintain the same. The parties to the contract intended to allow access to a landlocked parcel, which access would permit future development on the dominant estate. Steven Schroeder's property has remained rural and undeveloped. The construction of fences on the Horns' property for purposes of horse pasturing does not conflict with the original intent of the creators of the easement because the access road still fulfills the existing need for ingress, egress, and utilities to Steven Schroeder's undeveloped parcel. That need currently extends only to fourteen feet or less. The easement may expand on future development.

Steven Schroeder argues that the trial court failed to recognize Steven Schroeder's ancillary use of the easement such as grading, maintenance, and plowing snow from the road. We disagree. The trial court found that Schroeder's maintenance of the road only used up to fourteen feet in width. Schroeder does not challenge the finding of fact. Unchallenged findings of fact become verities on appeal. *State v. Stenson*, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997).

The trial court ordered Steven Schroeder to reinstall all three of the original gates, known as gates one, two, and three. We note that gate three lies inside Schroeder's land, and he holds the prerogative to remove or destroy gates inside his property.

CONCLUSION

Other than the order directing Steven Schroeder to re-erect gate three, we affirm the trial court's rulings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, C.J.