
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38689-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAY G. DEONIER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

Staab, J. — Ray Deonier appeals several felony convictions. Deonier argues his conviction for possession of depictions of a minor engaged in sexually explicit conduct must be reversed and dismissed because it was filed outside the statute of limitations. The State concedes on this issue. Additionally, Deonier contends that the search warrant for his phone was overbroad and the evidence was insufficient to support the remaining two convictions for third degree child molestation. Finally, he asserts the court erred by imposing an exceptional sentence.

We agree with the parties that the charge for possession of depictions of a minor engaged in sexually explicit conduct was filed outside the statute of limitations and must be dismissed with prejudice. As to the remaining two counts of third degree child

molestation, we affirm. Because we remand for resentencing, we decline to address the sentencing issue.

BACKGROUND

C.F.D. began living with her aunt and uncle, Shannon and Ray Deonier, when she was four years old. Growing up, C.F.D. referred to Shannon and Ray Deonier as "mom" and "dad."

At trial, C.F.D. testified that Deonier became more affectionate toward her when she was in the fifth grade. She testified that Deonier would drive her to strings practice before school and they would often stop at his office on the way. On several occasions, Deonier would have C.F.D. sit on his lap in his office and he would touch her stomach and breasts with his hands.

C.F.D. testified at trial that in the fall of 2015, when she was fourteen years old, Shannon and Deonier divorced. After the divorce, C.F.D. moved into an apartment with Deonier.

On April 20, 2016, C.F.D. told a school resource officer that Deonier was sexually abusing her. C.F.D. reported that the sexual assaults included one incident of forced vaginal intercourse and two incidents of oral sex, with Deonier forcing her to perform oral sex one of those times. During a subsequent interview, C.F.D. admitted that she made up the allegations that she was forced to perform sexual acts, but maintained that the acts did occur.

2

After interviewing C.F.D., the school resource officer contacted C.F.D.'s foster mother, Shannon, who indicated that she did not believe C.F.D.'s allegations against her ex-husband, Deonier, and told the resource officer that C.F.D. was "'worse than a pathological liar.'" Rep. of Proc. (RP) at 632. The Department of Children, Youth and Families had concerns that C.F.D.'s allegations were fabricated. Police decided to refer the case to a detective for follow up. C.F.D. was not removed from Deonier's care and was returned to the apartment the night she first reported the incident. She was not immediately removed from Deonier's home. C.F.D. later testified that after her first report about Deonier, the abuse continued.

On May 18, 2016, C.F.D. reported to the police that Deonier requested that she engage in sexual acts with him. C.F.D. told officers that she had made numerous secret audio recordings with her phone of Deonier asking her to participate in sexual activities. Earlier that day, she had made a secret audio recording of Deonier asking for a "hand job." Clerk's Papers (CP) at 714. She then saved the recording to her iCloud account and sent the audio recording to Deonier through the iMessage application. C.F.D. alleged that after she sent Deonier the audio recording, he remotely wiped or erased the contents of her phone.

C.F.D. indicated that she and Deonier frequently communicated using the Apple application iMessage and the messages could include conversations about sexual contact

3

between her and Deonier.  In addition, she observed Deonier's open browser suggesting he had been on the website "Tumblr" under the category of "Family Fun."  CP at 717.

C.F.D. also told officers that the previous day she had observed several recent cuts on Deonier's upper thigh area.  When she asked Deonier about the cuts, he told her that he cuts himself whenever C.F.D. denies his requests for sexual activities.

Following her report in May, C.F.D. was removed from Deonier's home and placed in protective care.  After being removed from the apartment, C.F.D. contacted Deonier to retrieve her belongings.  She testified that Deonier asked her for a photo in exchange.  C.F.D. could not remember the specific request, but the photograph she sent depicted C.F.D. with her shirt pulled up and her bra exposed.

Police obtained several search warrants.  They obtained a warrant to collect C.F.D.'s Apple account information.  In addition, they obtained a warrant to seize Deonier's cell phone and a warrant to photograph his body for evidence of cuts or injuries to his legs.

Police interviewed Deonier on May 25 and seized his phone pursuant to the warrant.  Officers also took photographs of Deonier's upper thigh with cut marks consistent with C.F.D.'s description.  Deonier admitted cutting himself, but denied that any cuts were related to sexual activities with C.F.D.  He also confirmed that he and C.F.D. communicated frequently by iMessage and Snapchat and that the messages included a photograph of C.F.D. lifting her shirt and exposing her bra.

4

When police seized Deonier's cell phone, they immediately placed it into airplane mode to prevent any network access and to preserve all the data contained in the phone. After seizing the phone, police obtained a warrant to search the phone. However, when they attempted to open it, they realized that it was password protected. Police then contacted Deonier, who agreed to unlock the phone with his thumbprint. When this did not work, he provided several pin numbers that did not work and then indicated that he did not know the pin, suggesting C.F.D must have changed it. While police did not believe Deonier's explanation, they could not access the contents of the phone at that time.

Deonier later inquired whether the investigation was continuing and when it would conclude. Detectives indicated that they were still investigating the allegations and were not releasing the phone. In July, detectives inactivated the case when they could not access Deonier's phone or find corroborating evidence.

In May 2019, detectives were informed of new software that would allow access to locked cell phones. Detective Armstrong obtained an updated warrant to search the phone using the new technology. The forensic unit was able to unlock Deonier's cell phone and located photographs and videos of C.F.D. within a hidden vault application disguised as a calculator application. One photograph, taken on December 10, 2015, depicted Deonier touching C.F.D.'s exposed breast. A second photograph, taken May 3, 2016, depicted Deonier's hand touching C.F.D.'s unclothed genital area.

5

Deonier was eventually charged by amended information with eight felonies including one count of first degree child molestation, three counts of third degree rape of a child, two counts of third degree child molestation, and two counts of second degree possession of depictions of a minor engaged in sexually explicit conduct.

Prior to trial, Deonier moved to suppress all evidence obtained from the 2019 search of his cell phone. He argued that police kept his cell phone for an unreasonable period of time, and the warrant was overbroad because it failed to provide temporal restrictions on the data to be searched. Deonier maintained that C.F.D. made allegations of assaults and secret recordings occurring between April and May 2016, thus the warrant should have limited the search to data created during that time. The trial court entered findings and conclusions denying Deonier's motion.

The case proceeded to trial where Deonier testified on his own behalf, denying that he raped or touched C.F.D. in a sexual manner. He also stated he was unaware that the photos of C.F.D. were on his cell phone.

The jury found Deonier guilty on the two counts of third degree child molestation and two counts of second degree possession of depictions of a minor engaged in sexually explicit conduct. These four charges were related to the two pictures found on Deonier's cell phone. The jury acquitted Deonier of the other four charges. Additionally, the jury returned special verdicts finding Deonier used his position of trust to facilitate the commission of these crimes.

At sentencing, the May 3, 2016 second degree possession of depictions of a minor engaged in sexually explicit conduct conviction was dismissed based on "unit of prosecution/double jeopardy" grounds. Supported by the jury's finding of an aggravating factor, and finding that an exceptional sentence was appropriate, the court sentenced Deonier to 60 months on each of the molestation convictions and 72 months concurrent on the possession of depictions of a minor engaged in sexually explicit conduct conviction.

Deonier appeals.

## ANALYSIS

1. STATUTE OF LIMITATIONS

Deonier argues that the remaining conviction for second degree possession of depictions of a minor engaged in sexually explicit conduct must be reversed because it was filed outside the statute of limitations for the offense. The State concedes that the statute of limitations had run by the time the charges were filed.

Although this issue was not raised below, we can consider it for the first time on appeal. Generally, this court "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). However, a party may raise "failure to establish facts upon which relief can be granted" for the first time on appeal. RAP 2.5(a)(2). Because a valid statute of limitation defense deprives a trial court of the authority to enter judgment, "RAP 2.5(a)(2) can authorize the advancement of such a claim for the first time on appeal." *State v. Davis*, 17 Wn. App. 2d 264, 269, 486 P.3d 136 (2021).

7

However, for RAP 2.5(a)(2) to be implicated, "the defendant must not have removed the statute of limitation defense from controversy prior to judgment being entered." *Id*. Here, the court lacked authority to sentence Deonier on untimely charges and because Deonier did not remove the statute of limitation defense from controversy, we consider the issue under RAP 2.5(a)(2).

RCW 9A.04.080 provides the statute of limitations for criminal offenses. Of the offenses listed, the time periods for prosecution range from one year to any time after the commission of the crime. *See* RCW 9A.04.080.[1] If a crime does not have an enumerated statutory period listed in RCW 9A.04.080(1)(a)-(i), the following subsection notes that "no other felony may be prosecuted more than three years after its commission." RCW 9A.04.080(j).

Deonier was charged by information on June 17, 2019, with two counts of second degree possession of depictions of a minor engaged in sexually explicit conduct alleging the crimes occurred on or about May 3, 2016 (count VII) and on or about December 10, 2015 (count VIII), in violation of "RCW 9.68A.070(2)(A)." Although count VIII was dismissed based on the "unit of prosecution/double jeopardy" grounds, count VII remained and Donier was convicted on that charge. This is a class B felony. RCW 9.68A.050(2)(b). Because this crime is not specifically listed in former RCW

---

[1] As of the dates of the alleged offenses, the 2013 version of the statute was in effect. Former RCW 9A.04.080 (LAWS OF 2013, ch. 17, §1).

9A.04.080(1)(a)-(i) (2013),[2] the catch-all three-year statutory period applies.  *See former*

RCW 9A.04.080(j).  The charge for this offense was filed more than three years after the

alleged incident occurred.

The State notes that the statute of limitations for sex offenses begins to run on

either "the date of commission or four years from the date on which the identity of the

suspect is conclusively established by deoxyribonucleic acid testing or by photograph as

defined in RCW 9.68A.011, whichever is later."  RCW 9A.04.080(3).  While the charges

against Deonier would fall within the four-year period, the State acknowledges that this

provision does not apply when the identity of the perpetrator is known, but evidence of

the crime is inaccessible.  *See State v. McConnell*, 178 Wn. App. 592, 605, 315 P.3d 586

(2013) ("interpreting 'conclusively established' in a case where DNA profile had not yet

been matched to a known suspect").  Br. of Resp't at 25.  Therefore, the three-year

limitations period applies in this case.

We accept the State's concession and agree with the parties that count VII,

charging Deonier with second degree possession of depictions of a minor engaged in

sexually explicit conduct was filed after the limitations period had expired and must be

dismissed with prejudice.

---

[2] Other than RCW 9A.04.080(3) noted below, the amendments to RCW 9A.04.080 have not extended the statute of limitations for the offense of second degree possession of depictions of a minor engaged in sexually explicit conduct.

2.   SEARCH WARRANT

Deonier argues that the warrant authorizing the search of his cell phone in 2019 failed to comply with the particularity requirement of the Fourth Amendment.  The State responds that Deonier's appellate briefing on this issue is inadequate, Deonier failed to preserve the argument he raises on appeal, and the warrant was not overbroad.  We determine that the issue raised on appeal is insufficiently developed and decline review of the issue.

Deonier's briefing does not specify the specific deficiency with the warrant and this hampers our ability to consider the issue.  Deonier contends that the Fourth Amendment requires that the warrant identify items to be seized with particularity so that law enforcement can reasonably ascertain and identify the contraband.  Deonier generally asserts that the warrant here was overbroad because it allowed officers to seize "lawfully possessed materials and data completely unrelated to the investigation."  Br. of Appellant at 12.  Deonier does not provide specifics on how the warrant was overbroad.  Nor does he identify the "lawfully possessed materials and data" that he claims were unlawfully seized.  *See* RAP 10.3(a)(5).  Instead, he cites *State v. Besola*, 184 Wn.2d 605, 359 P.3d 799 (2015) without providing analysis of the law or application of the facts.

There are significant factual differences between this case and *Besola*.  Additionally, *Besola* addressed several distinct legal issues.  Any attempt by this court to formulate similarities between this case and *Besola* would begin to look like inappropriate advocacy.

*In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 328, 394 P.3d 367 (2017) ("[a]ppellate courts should not be placed in [the position] of crafting issues for the parties").

Alternatively, the State argues that we should decline review of the warrant issue because the theory raised on appeal is different from the argument raised before the trial court. Prior to trial, Deonier moved to suppress evidence seized pursuant to the search warrant, arguing that the warrant was overbroad and should have been limited to searching for and seizing audio recordings created between April and May 2016. Deonier does not raise this argument on appeal. Absent a manifest constitutional error, we do not consider new issues or new theories raised for the first time on appeal. *See* RAP 2.5(a)(3); *Wilson & Son Ranch, LLC v. Hintz*, 162 Wn. App. 297, 303, 253 P.3d 470 (2011) ("[W]e do not consider theories not presented below.").

Because the issue is not adequately briefed or preserved, we decline to address Deonier's challenge to the evidence seized pursuant to execution of the search warrant.

3. SUFFICIENCY OF THE EVIDENCE

Deonier contends the evidence was insufficient to convict him for the two counts of third degree child molestation. He argues that without the photos that should have been suppressed, the remaining evidence was too generalized, leaving the jury to speculate. Since we affirm the trial court's denial of Deonier's motion to suppress, we consider the photographs in our analysis of the evidence.

In a criminal case, "[t]he State has the burden of proving the elements of a crime beyond a reasonable doubt." *State v. Clark*, 190 Wn. App. 736, 755, 361 P.3d 168 (2015). When a defendant challenges sufficiency of the evidence for a given offense, this court views "the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* A challenge to the sufficiency of the evidence "admits the truth of the State's evidence." *Id.*

Deonier was convicted of two counts (counts V and VI) of third degree child molestation. Under former RCW 9A.44.089, a person is guilty of third degree child molestation when they have sexual contact with someone who is at least fourteen years old but less than sixteen years old, who is not married to the perpetrator, and the perpetrator is at least 48 months older than the victim. "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party." RP at 1387.

The State produced evidence that C.F.D.'s birthday is May 14, 2001. Thus, she was 14 years old at the time of both charged incidents, which occurred on December 10, 2015, and May 3, 2016. Deonier was born on January 23, 1971, so C.F.D. was at least 48 months younger than him. Furthermore, Deonier and C.F.D. were never married. Deonier's phone had photographs of his hand touching C.F.D.'s breast and genital area. This evidence is sufficient to support the two convictions for third degree child molestation.

12

No. 38689-9-III
*State v. Deonier*

4.  EXCEPTIONAL SENTENCE

Deonier contends the exceptional sentence cannot be upheld if there are no underlying offenses. The State concedes that Deonier must be resentenced although it does not agree that there are no underlying offenses remaining.

We reverse and dismiss with prejudice Deonier's remaining conviction for possession of depictions of a minor engaged in sexually explicit conduct. We affirm his two convictions for third degree child molestation.

Since our decision requires that the case be remanded for a full resentencing, we decline to address the sentencing issue raised by Deonier.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

13